STATE OF CONNECTICUT *v.* JOSEPH M. FLYNN
(4132)
(4153)

DUPONT, C. J., STOUGHTON and FOTI, Js.

Argued November 6, 1987—decision released April 5, 1988

*Richard Emanuel,* with whom, on the brief, was *Charles Hanken,* for the appellant (defendant).

*Susan C. Marks,* deputy assistant state's attorney, with whom, on the brief, was *John Whalen,* assistant state's attorney, for the appellee (state).

DUPONT, C. J. The defendant appeals from the judgment of conviction, after a jury trial, of the crimes of assault on a peace officer in violation of General Statutes § 53a-167c, reckless endangerment in the second degree in violation of General Statutes § 53a-64, breach of the peace in violation of General Statutes § 53a-181, and interfering with an officer in violation of General Statutes § 53a-167a. The defendant claims that the trial court erred (1) in imposing multiple punishments for the same offense in violation of his fifth amendment right against double jeopardy, (2) in rendering judgment upon inconsistent verdicts, (3) in denying his motion to view the scene of the alleged crimes, (4) in its instructions to the jury regarding circumstantial evidence and on interfering with an officer, and in commenting on the evidence, and (5) in failing to instruct the jury that it was required to reach unanimity on alternative elements of an offense.[1]

The jury could reasonably have found the following facts. On Saturday, November 17, 1984, at approximately 2:30 a.m., four Milford police officers, Officers Mitchell Greenberg, John Kranyak, Gary Stacoffe, and Douglas Youd, arrived at a local bar in response to an assault complaint. After investigation, the officers concluded that the suspect had left that bar to go to another nearby bar, the Double Play Saloon. The officers went to the Double Play Saloon in search of the suspect, who was not the defendant here. Kranyak, Stacoffe and Youd entered the Double Play through the front door, and walked toward the rear dance floor area. Greenberg

---

[1] In a separate appeal, Appeal No. 4153, the defendant claims error in the trial court's order revoking his probation and imposing the originally suspended one-year term. Both the defendant and the state concede that the order revoking the probation need be reversed only if the defendant's conviction for assault on a peace officer is reversed. Because we do not disturb the defendant's conviction for assault on a peace officer on this appeal, we need not address the issue of revocation of the defendant's probation.

entered the bar a minute later. All officers were in uniform. The bar was crowded, dark and noisy. While Kranyak and Stacoffe were standing near the dance floor, with their backs to the bar area, Kranyak was struck on the right shoulder by a beer bottle and Stacoffe was struck on the back of the head by a hard blunt object, allegedly a beer bottle.

At trial, Youd testified that he had been standing behind Stacoffe and Kranyak, and that he saw the defendant throw a full or partially full beer bottle at the two officers, although he did not actually see it strike the officers. He further testified that he grabbed the defendant and informed him that he was under arrest and that the defendant had resisted the attempts to arrest him. Stacoffe testified that he heard a "scuffling" and both he and Kranyak became aware that Youd was attempting to make an arrest, that the defendant was kicking and struggling and that it required the efforts of all four officers to handcuff and remove him from the Double Play Saloon.

Witnesses for the prosecution testified that at the police station, after Youd had informed the defendant of his *Miranda* rights; *Miranda* v. *Arizona,* 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966); the defendant asked several times what the charges were against him and then made the comment: "That's why I threw the bottle."

At trial, the defendant took the stand in his own defense and denied that he had thrown the bottle or that he had resisted arrest. Several witnesses for the defense corroborated the defendant's version of the events.

The jury found the defendant guilty on all four counts charged in the short-form information. On April 12, 1985, the trial court sentenced the defendant to the following terms of imprisonment: three years for assault

on a peace officer; six months for reckless endangerment in the second degree; six months for breach of peace; and one year for interfering with an officer. The sentences imposed were ordered to run consecutively, for a total effective sentence of five years.

## I

The defendant first claims that the trial court imposed multiple punishments for the same offense in violation of his federal and state constitutional rights to be free from being placed twice in jeopardy. The defendant argues (1) that the crime of interfering with an officer is a lesser included offense of assault on a peace officer, and (2) that the crime of reckless endangerment in the second degree is a lesser included offense of assault on a peace officer. Although the defendant did not raise the double jeopardy issue at trial, it is reviewable under *State* v. *Evans,* 165 Conn. 61, 69–70, 372 A.2d 576 (1973), because "this claim involves a question of a fundamental constitutional right" and is adequately supported by the record. *State* v. *Devino,* 195 Conn. 70, 73, 485 A.2d 1302 (1985); *State* v. *Williams,* 12 Conn. App. 225, 229, 530 A.2d 627 (1987).

The fifth amendment to the United States constitution declares that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb . . . ." This amendment is fully applicable to the states through the due process clause of the fourteenth amendment to the United States constitution. *Benton* v. *Maryland,* 395 U.S. 784, 89 S. Ct. 2056, 23 L. Ed. 2d 707 (1969). Although the Connecticut constitution does not include a specific double jeopardy provision, our Supreme Court "has long recognized as a fundamental principle of common law that no one shall be put in jeopardy more than once for the same offense." *State* v. *Langley,* 156 Conn. 598, 600–601, 244 A.2d 366

(1968), cert. denied, 393 U.S. 1069, 89 S. Ct. 726, 21 L. Ed. 2d 712 (1969). The due process guarantees of article first, § 8, of the Connecticut constitution, therefore, have been held to encompass protection against double jeopardy. *Kohlfuss* v. *Warden,* 149 Conn. 692, 695, 183 A.2d 626, cert. denied, 371 U.S. 928, 83 S. Ct. 298, 9 L. Ed. 2d 235 (1962).[2]

One of the protections flowing from the double jeopardy guarantee is that "against multiple punishments for the same offense" in a single trial. *North Carolina* v. *Pearce,* 395 U.S. 711, 717, 89 S. Ct. 2072, 23 L. Ed. 2d 656 (1969); *State* v. *Goldson,* 178 Conn. 422, 423–24, 423 A.2d 114 (1979). In *State* v. *Johns,* 184 Conn. 369, 439 A.2d 1049 (1981), our Supreme Court reaffirmed the proposition that " '[w]here consecutive sentences are imposed at a single criminal trial, the role of the constitutional guarantee [against double jeopardy] is limited to assuring that the court does not exceed its legislative authorization by imposing multiple punishments for the same offense . . . .' " Id., 376, quoting *Brown* v. *Ohio,* 432 U.S. 161, 165, 97 S. Ct. 2221, 53 L. Ed. 2d 187 (1977). The United States Supreme Court in *Blockburger* v. *United States,* 284 U.S. 299, 52 S. Ct. 180, 76 L. Ed. 306 (1932), articulated the governing standard for determining whether two offenses are sufficiently distinguishable to permit the imposition of cumulative punishment. "The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of an additional fact which the other does not."

---

[2] Although the defendant relies on both the fifth and fourteenth amendments to the United States constitution and article first, § 8, of the Connecticut constitution, he offers no separate analysis of the Connecticut constitution as a basis for different treatment of his federal and state constitutional claims. We decline to undertake such analysis. See *State* v. *Foshay,* 12 Conn. App. 1, 14 n.10, 530 A.2d 611 (1987).

Id., 304. In applying the prohibition against double jeopardy, the appropriate inquiry involves resolving two separate but related issues. The first issue that must be addressed is whether the crimes arise out of the "same act or transaction." Only if this issue is answered in the affirmative do we need to address the second issue of whether the crimes charged constitute the "same offense." *State* v. *Devino*, supra, 74; *State* v. *Goldson*, supra, 424.

With respect to the first issue, we must refer to the language of the information against the defendant.[3] Count one of the information charged the defendant with the crime of assault on a police officer in violation of either General Statutes § 53a-167c (a) (1) or (a) (2),[4] at Milford, on or about November 17, 1984. Count two of the information charged the defendant with the crime of reckless endangerment in violation of General Statutes § 53a-64, at Milford, on or about November 17, 1984; count three, with the crime of breach of peace in violation of General Statutes § 53a-181,[5] on or about November 17, 1984; and count four, with the crime of interfering in violation of General Statutes § 53a-167a, at Milford, on or about November 17, 1984.

The state argues that the charges do not relate to the same act or transaction in light of the fact that the evidence adduced at trial suggested two discrete acts by the defendant—the allegation that the defendant threw a beer bottle at a police officer, striking and injuring him, and the allegation that the defendant

---

[3] Although the record indicates that a motion for a bill of particulars was prepared by the defendant, there is no indication that the motion was filed with the court.

[4] The short form information simply charged violation of the applicable statute. A redacted information in the trial court file specified that the assault on a peace officer violated either General Statutes § 53a-167c (a) (1) or (a) (2).

[5] The short form information alleged violation of General Statutes § 53a-181. The trial court, however, instructed the jury only on § 53a-181 (6).

strenuously resisted with force when the officers subsequently attempted to arrest him.

We acknowledge that the defendant's failure to pursue a motion for a bill of particulars complicates this inquiry. The state and the defendant concede that the charge of assault on a police officer relates solely to the bottle throwing incident. With respect to the remaining three charges, however, neither the information nor the court's jury instructions specified what act was alleged to constitute a violation of which statute. The information states the exact same place and time in connection with all four crimes, and is silent with respect to any particular act which violates any particular statute. We must therefore conclude that, for the purpose of double jeopardy analysis, the crimes charged arose out of the same act or transaction. See *State* v. *Goldson,* supra, 425 (an information and bill of particulars stipulating a single date and time warrants the conclusion that the charges, thus framed, clearly relate to the same act or transaction and cannot avoid the limitations imposed by the double jeopardy clause). This conclusion necessarily requires this court to resolve the second prong of the double jeopardy analysis, namely, whether the crimes charged are the same offense.

The relevant inquiry then becomes whether each statutory violation requires proof of a fact which the other does not. *Blockburger* v. *United States,* supra, 304; *State* v. *Devino,* supra, 74–75. It is well established that if two offenses "stand in the relationship of greater and lesser included offense, then '[t]he greater offense is . . . by definition the "same" for purposes of double jeopardy as any lesser offense included in it.' " *State* v. *Goldson,* supra, 425, quoting *Brown* v. *Ohio,* supra, 168. A crime is a lesser included offense if "it is not possible to commit the greater offense, in the manner described in the information or bill of particulars, with-

out having first committed the lesser . . . ." *State* v. *Whistnant,* 179 Conn. 576, 588, 427 A.2d 414 (1980).

To determine what constitutes a lesser included offense of the offense charged, this court will examine the statutes and the information as opposed to the evidence presented at trial. *State* v. *Troynack,* 174 Conn. 89, 96–97, 384 A.2d 326 (1977); *State* v. *DeMatteo,* 13 Conn. App. 596, 602, 538 A.2d 1068 (1988). We first consider whether interfering with an officer is a lesser included offense of assault on a peace officer. We hold that it is.

General Statutes § 53a-167a (a) delineates the crime of interfering with an officer as charged: "A person is guilty of interfering with an officer when he obstructs, resists, hinders or endangers any peace officer or fireman in the performance of his duties." This statutory provision has been interpreted to require the intention to interfere with the performance of an officer's duties as a necessary element of the offense. *State* v. *Beckenbach,* 1 Conn. App. 669, 679, 476 A.2d 591 (1984), citing *State* v. *Walker,* 34 Conn. Sup. 548, 550, 375 A.2d 426 (1976), rev'd on other grounds, 198 Conn. 43, 501 A.2d 752 (1985). General Statutes § 53a-167c (a) (1) and (2) delineates the crime of assault on a peace officer as charged: "A person is guilty of assault of a peace officer or a fireman when, with intent to prevent a reasonably identifiable peace officer or fireman, as defined in section 53a-3, from performing his duty, (1) he causes physical injury to such peace officer or fireman, or (2) he throws or hurls, or causes to be thrown or hurled, any rock, bottle, can or other article, object or missile of any kind capable of causing physical harm, damage or injury, at such peace officer or fireman."

Applying the standard of whether each provision requires proof of an additional fact which the other does

not, we conclude that a person could not commit the greater offense of assault on a peace officer without having committed the lesser offense of interfering with a peace officer. It is theoretically impossible to have a situation where one, with intent to prevent the performance of duties of a peace officer, either causes physical injury to an officer or throws or hurls a bottle or other object at an officer capable of causing harm without at the same time obstructing, hindering, resisting or endangering that officer in the performance of his duties.

Although the offenses as charged may constitute the same offense under *Blockburger* v. *United States*, supra, "the legislature may nevertheless explicitly authorize multiple punishments for their commission without violating the prohibition of double jeopardy. See *Ohio* v. *Johnson*, 467 U.S. 493, 499 n.8, 104 S. Ct. 2536, 81 L. Ed. 2d 425 (1984); *Missouri* v. *Hunter*, 459 U.S. 359, 367-68, 103 S. Ct. 673, 74 L. Ed. 2d 535 (1983)." *State* v. *Devino*, supra, 76 n.6; *State* v. *Williams*, supra, 232. "Where consecutive sentences are imposed at a single criminal trial, the role of the constitutional guarantee [against double jeopardy] is limited to assuring that the court does not exceed its legislative authorization by imposing multiple punishments for the same offense." *Brown* v. *Ohio*, supra, 165. The statutory provisions involved here, however, do not expressly authorize the imposition of ,multiple punishments. Nor are we aware of any legislative history that indicates the legislature's intent to provide multiple punishments for interference with an officer and assault on an officer. "Unless a clear intention to fix separate penalties for each [offense] involved is expressed, the issue should be resolved in favor of lenity and against turning a single transaction into multiple offenses." *State* v. *Rawls*, 198 Conn. 111, 122, 502 A.2d 374 (1985).

Because we hold that the crimes of interference with an officer and assault on an officer constitute the same offense and because there is no expression of legislative intent that the crimes warrant separate punishment, the defendant's conviction on both counts one and four violated the constitutional and common law prohibitions against double jeopardy.

"There remains for our consideration of this issue the proper scope of our remand. Had the trial court properly treated the charges of [assault and interfering] as greater and lesser included offenses, respectively, it would have made it unnecessary in this case for the jury to consider the lesser offense after finding guilt on the greater. Double jeopardy would have been precluded." *State* v. *Williams,* supra, 232–33. "One of the convictions, as well as its concurrent sentence, is unauthorized punishment for a separate offense. See *Missouri* v. *Hunter,* 459 U.S. 359, 368 [103 S. Ct. 673, 74 L. Ed. 2d 535] (1983)." *Ball* v. *United States,* 470 U.S. 856, 864, 105 S. Ct. 1668, 84 L. Ed. 2d 740 (1985). The defendant's conviction on the lesser included offense of interference with an officer in violation of General Statutes § 53a-167a, which was contained in the fourth count, must therefore be set aside by the trial court and judgment rendered for the defendant on that count. *State* v. *Rawls,* supra; *State* v. *Goldson,* supra; *State* v. *Williams,* supra, 225, citing *Ball* v. *United States,* supra.

We next consider whether reckless endangerment in the second degree is a lesser included offense of assault on a peace officer. We hold that it is not. General Statutes § 53a-64 delineates the crime of reckless endangerment in the second degree. A person is guilty of reckless endangerment in the second degree when he (1) recklessly (2) engages in conduct (3) which creates a risk of physical injury (4) to another person. The elements of this crime are "distinct and dissimilar" from

the crime of assault on an officer. See *State* v. *Trujillo,* 12 Conn. App. 320, 336, 531 A.2d 142 (1987). A conviction of assault on a peace officer as charged in the information, requires proof of (1) intent to prevent (2) a reasonably identifiable officer (3) from performing his duty (4) by causing physical injury to such officer or (5) by throwing or causing to be thrown at such officer an object capable of causing physical harm, damage or injury. General Statutes § 53a-167c (a) (1) and (2). We emphasize that "intentionally and recklessness are two distinct states of mind." *State* v. *Giguere,* 184 Conn. 400, 403, 439 A.2d 1040 (1981). These statutory violations, therefore, are not the same offense for double jeopardy purposes.

## II

The defendant next claims that the trial court erred in permitting the jury to convict him of crimes which are legally inconsistent because they require two different, mutually exclusive mental states, those of intentionality and recklessness. The defendant argues that although this claim was not raised in the trial court, it is entitled to an *Evans* review because the inconsistent guilty verdicts violated his constitutional rights to due process of law. The state argues that this claim is not reviewable under either *State* v. *Evans,* supra, or the plain error doctrine. Practice Book § 4185.

In *State* v. *Thurman,* 10 Conn. App. 302, 306–307, 523 A.2d 891, cert. denied, 204 Conn. 805, 528 A.2d 1152 (1987), this court clarified the appropriate standards for deciding an *Evans* claim and articulated a four-pronged analysis. That analysis requires: (1) does the defendant raise an issue which, by its terms, implicates a fundamental constitutional right; (2) is the defendant's constitutional claim adequately supported by the record; (3) was there, in fact, based on the record, a deprivation of a constitutional right of a crimi-

nal defendant; and (4) did the deprivation deny the defendant a fair trial, thereby requiring that his conviction be set aside. The first two questions relate to the reviewability of a defendant's claim, whereas the latter two questions relate to the substance of the claim upon review. Each question must be answered in the affirmative before proceeding to the succeeding question. *State* v. *Newton,* 8 Conn. App. 528, 531, 513 A.2d 528 (1986).

Applying the *Thurman* standard to this case, we first recognize that the defendant's claim, on its face, implicates the fundamental constitutional right to due process of law. The first prong of the *Thurman* standard is therefore satisfied. The second prong "requires that we review the record in a *limited* way and determine, on the basis of that limited review, whether the defendant's claim is truly of constitutional proportions or is simply characterized as such by the defendant." (Emphasis in original.) *State* v. *Thurman,* supra, 306. This case does not involve a claim of inconsistency arising from the acquittal of a defendant on one count and his conviction on another count. If that were the claim, there would be no implication of a fundamental constitutional right.[6] *United States* v. *Powell,* 469 U.S. 57, 65, 105 S. Ct. 471, 83 L. Ed. 2d 461 (1984); *Harris* v. *Rivera,* 454 U.S. 339, 345, 102 S. Ct. 460, 70 L. Ed. 2d 530 (1981); *State* v. *Gaston,* 198 Conn. 490, 492, 503 A.2d 1157 (1986). This case involves a claim of inconsistency arising from *multiple guilty verdicts* and whether such a claim implicates a fundamental constitutional right.

This issue has not previously been addressed by the courts of our state. Nor are we aware of any other juris-

---

[6] In such a case, there would also be no error because consistency in verdicts is not necessary. *State* v. *Daniels,* 13 Conn. App. 133, 136, 534 A.2d 1253 (1987).

diction that has addressed this issue. In order to analyze the issue, the rationale underlying the rule against challenging inconsistency arising from an acquittal on one count and a conviction on another must be examined. In *Dunn* v. *United States,* 284 U.S. 390, 52 S. Ct. 189, 76 L. Ed. 356 (1932), the United States Supreme Court held that a criminal defendant convicted by a jury on one count could not attack that conviction because it was inconsistent with the jury's verdict of acquittal on another count. The rationale behind the *Dunn* rule is that "where truly inconsistent verdicts have been reached, '[t]he most that can be said . . . is that the verdict shows that either in the acquittal or the conviction the jury did not speak their real conclusions, but that does not show that they were not convinced of the defendant's guilt.' " *United States* v. *Powell,* supra, 64–65, quoting *Dunn* v. *United States,* supra, 393. "It is . . . possible that the jury, convinced of guilt, properly reached its conclusion on the compound offense, and then through mistake, compromise, or lenity, arrived at an inconsistent conclusion on the lesser offense . . . . Inconsistent verdicts therefore present a situation where 'error,' in the sense that the jury has not followed the court's instructions, most certainly has occurred, but it is unclear [whether the error benefits the Government or the criminal defendant]. Given this uncertainty, and the fact that the Government is precluded from challenging the acquittal, it is hardly satisfactory to allow the defendant to receive a new trial on the conviction as a matter of course . . . . For us, the possibility that the inconsistent verdicts may favor the criminal defendant as well as the Government militates against review of such convictions at the defendant's behest. This possibility is a premise of Dunn's alternative rationale—that such inconsistencies often are a product of jury lenity. Thus, *Dunn* has been explained by both courts and commen-

tators as a recognition of the jury's historic function, in criminal trials, as a check against arbitrary or oppressive exercises of power by the Executive Branch." *United States* v. *Powell,* supra, 65.

The alleged error involved here, however, is not a claim of inconsistency between acquittal on one count and conviction on another, but rather a claim of inconsistency between and among convictions on two or more counts. The rationale articulated in *Dunn* v. *United States* and *United States* v. *Powell,* supra, for finding that consistency in the verdict is not constitutionally required and holding that inconsistent verdicts are not reviewable is not applicable to inconsistent guilty verdicts. The effect on the criminal defendant from inconsistent acquittal and conviction verdicts is clearly distinguishable from the effect on the defendant from inconsistent conviction verdicts. First, the defendant's claim of error really goes to the alleged error of the trial court, as opposed to the error of the jury, for failure to properly instruct the jury on the element of intent required for the crime of interfering with an officer, and for failing to instruct the jury that it could not find the defendant guilty of both a crime requiring reckless conduct and a crime requiring intentional conduct for the doing of the same act. The defendant argues that if the jury were properly instructed, they would not have found the defendant guilty on multiple counts.

Second, the rationale emphasized in *Dunn* v. *United States,* supra, 393, that "[w]e interpret the acquittal as no more than [the jury's] assumption of power which they had no right to exercise, but to which they were disposed through lenity," has no relevance to multiple guilty verdicts. Inconsistent guilty verdicts never are the result of lenity, and any error is always detrimental to the defendant. Third, the error arising from inconsistent guilty verdicts would not be based either

on pure speculation nor would it require inquiries into the jury's deliberations. The factors which counselled the *Dunn* court against review of inconsistent verdicts does not apply with multiple guilty verdicts.

Furthermore, the rationale of the *Powell* court that the "fact that the inconsistency may be the result of lenity, coupled with the Government's inability to invoke review, suggests that inconsistent verdicts should not be reviewable"; *United States* v. *Powell,* supra, 66; is inapposite to the defendant's claim of error here. As a result, the general rule in *State* v. *Gaston,* supra, does not apply. Accordingly, we hold that one of the exceptions to the *Dunn* rule is "inconsistent multiple convictions, where the defendant could be guilty of either, but not both charged offenses." *United States* v. *Duz-Mor Diagnostic Laboratory, Inc.,* 650 F.2d 223, 226 n.3 (9th Cir. 1981).

The second prong of the *Thurman* analysis is, therefore, satisfied because our limited review indicates that the defendant's claim is truly of constitutional proportions; the alleged error implicates the defendant's fundamental right to due process of law. Because the defendant's claim is reviewable under the second "exceptional circumstance" of *State* v. *Evans,* supra, we consider the third prong of the *Thurman* analysis which requires us to review fully the defendant's claim to determine whether, in fact, a fundamental constitutional right of his was violated. We hold that it was not.

The defendant claims that he could not act both intentionally *and* recklessly. General Statutes § 53a-3 (13) provides the definition of reckless: "A person acts 'recklessly' *with respect to a result or to a circumstance described by a statute defining an offense* when he is aware of and consciously disregards a substantial and unjustifiable risk that such result will occur or that such circumstance exists. The risk must be of such nature

and degree that disregarding it constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation." (Emphasis added.) General Statutes § 53a-3 (11) provides the definition of intent: "A person acts 'intentionally' *with respect to a result or to conduct described by a statute defining an offense* when his conscious objective is to cause such result or to engage in such conduct." (Emphasis added.)

The defendant argues that several combinations of the four offenses for which he was charged and convicted are legally inconsistent because they require different mental states.[7] He could not, he claims, act both intentionally and recklessly with regard to the same factual circumstance.

Ordinarily, a jury is precluded from finding a defendant guilty of two offenses that are inconsistent as a matter of law. See, e.g., *Milanovich* v. *United States,* 365 U.S. 728, 81 S. Ct. 728, 5 L. Ed. 2d 773 (1961) (defendant cannot be convicted for both stealing and receiving the same goods). In such circumstances, the inconsistent offenses should be presented to the jury in the alternative. *Fuller* v. *United States,* 407 F.2d 1199 (D.C. Cir. 1968) (en banc), cert. denied, 393 U.S. 1120, 89

---

[7] In his brief, the defendant argues: "[T]here were two separate acts of the defendant giving rise to criminal liability—the throwing of the bottle and the subsequent physical struggle or resistance to apprehension. Each of those two actions constituted *either* intentional conduct *or* reckless conduct, but not both. 'The law [cannot] imply two different and conflicting intents from the same act.' *People* v. *Werner,* 29 Cal. App. 2d 126, 84 P.2d 168, 171 (1938) . . . . Due to their mutually exclusive mental-state elements, it was illogical, unreasonable, and contradictory for the jury to convict the defendant on both charges (based on the same conduct) in the following groups: (1) assault on a peace officer and reckless endangerment; (2) assault on a peace officer and breach of peace (if breach conviction premised on reckless conduct) . . . (3) reckless endangerment and breach of peace (if breach conviction premised on intentional conduct); (4) reckless endangerment and interfering with an officer . . . (5) breach of peace (premised on reckless conduct) and interfering with an officer . . . ."

S. Ct. 999, 22 L. Ed. 2d 125 (1969). The statutory definitions make clear that "[r]eckless conduct is not intentional conduct because one who acts recklessly does not have a conscious objective to cause a particular result." *State* v. *Beccia,* 199 Conn. 1, 4, 505 A.2d 683 (1986). These mental states, however, exist only with reference to particular "results" or "circumstances." Thus, it is necessary to examine the mental state element as it arises in each particular statute defining an offense to determine whether actual inconsistency exists.

The crime of assault on a peace officer, which requires intentional conduct, and the crime of reckless endangerment, which requires reckless conduct, are not legally inconsistent offenses. General Statutes § 53a-167c (a) provides in relevant part that "[a] person is guilty of assault of a peace officer . . . when [he acts] with *intent to prevent* a reasonably identifiable peace *officer . . . from performing his duty . . . .*" (Emphasis added.) General Statutes § 53a-64 provides that a person is guilty of reckless endangerment if he *"recklessly* engages in conduct which *creates a risk* of physical injury *to another person."* (Emphasis added.) Applying these statutory definitions to the facts of this case, we find that the jury could reasonably have found that when the defendant threw the beer bottle at the officers he did so with the requisite intent—preventing the officers from performing their duties—to find him guilty of assault on a peace officer. At the same time, the jury could reasonably have found that the defendant acted recklessly with respect to the other patrons in the bar and properly have found him guilty of reckless endangerment. It is not inconsistent, therefore, to find that a criminal defendant possesses two different mental states, as long as these different mental states relate to different results.

This analysis is equally applicable to the defendant's remaining four combinations of allegedly inconsistent

offenses. We find it unnecessary, therefore, to discuss them separately.

### III

The defendant's third claim of error is that the trial court erred in denying his motion requesting that the jury "be conducted to the location of the alleged crimes —the Double Play Saloon, in Milford, Connecticut." See Practice Book § 844. The motion stated that a view of the alleged crime scene would "be helpful to the jury in applying the evidence to the law in the determination of a verdict." The state opposed the defendant's motion, maintaining that the defense had not claimed that the view was necessary or important for a clearer understanding of the issues. The court then denied the motion but stated that "[i]f it appears at some later [point] in the testimony that it would be beneficial to the clear understanding of the case, I will allow [the defendant] to renew [the motion for viewing by the jury]."

Pursuant to Practice Book § 844, a trial court may permit a viewing of the scene of the crime if it is of the opinion that a viewing would be helpful to the jury in determining some material factual issue in the case. " 'The test is whether a view is necessary or important in order to obtain a clearer understanding of the issues and to apply the evidence properly. . . .' " *O'Connor* v. *Dory Corporation,* 174 Conn. 65, 71, 381 A.2d 559 (1977), quoting *Dickson* v. *Yale University,* 141 Conn. 250, 256, 105 A.2d 463 (1954). The decision of whether to allow a jury to view the crime scene rests within the sound discretion of the trial court. *Mackin* v. *Mackin,* 186 Conn. 185, 190, 439 A.2d 1086 (1982); *State* v. *Taxiltaridis,* 2 Conn. App. 617, 622, 481 A.2d 98 (1984).

In this case, the trial court's denial of the motion to view was not an abuse of discretion. Although a view-

ing of the Double Play Saloon might have been helpful to the jury, the jury had before it the testimony of several witnesses (three of the state's five witnesses and all six of the defense witnesses) regarding the configuration and the atmosphere of the premises, as well as diagrams of the scene prepared by both the state and the defendant.

## IV

The defendant also challenges the trial court's instructions to the jury on circumstantial evidence and claims that the trial court improperly commented on the evidence.[8]

## A

The defendant claims that the court's instructions on circumstantial evidence erroneously diluted the state's burden of proof to establish his guilt beyond a reasonable doubt and, instead, permitted the jury to find him guilty by a preponderance of the evidence. The defendant did not file a request to charge, nor did he take exception to the trial court's charge on circumstantial evidence. Ordinarily, this court will not review claims of error not properly preserved for appeal; Practice Book § 4185. This claim, however, implicates the defendant's constitutional right to have the state prove him guilty beyond a reasonable doubt, and is reviewable under the *Evans* doctrine. *State* v. *Hufford,* 205 Conn. 386, 406, 533 A.2d 866 (1987); *State* v. *Evans,* supra.

---

[8] The defendant also claims that the trial court erred in its instructions to the jury on the crime of interfering with an officer in violation of General Statutes § 53a-167a. Because we held previously that the conviction of the crime of interfering with an officer must be reversed as it is a lesser included offense of the crime of assault on a peace officer in violation of General Statutes § 53a-167c, this issue has become moot. The defendant further claims that the trial court erred in its instructions to the jury permitting it to render inconsistent verdicts. We disposed of this issue earlier in this opinion.

In its general charge on circumstantial evidence, the trial court instructed the jury: "Proof beyond a reasonble doubt does not mean that you must have direct evidence supporting a fact. You may apply the law of circumstantial evidence. This rule involves the offering of evidence of facts from which you are asked to infer the existence of another fact or set of facts. . . . Such an inference may be made provided two elements in the application of this rule are satisfied: (a) that the fact from which you're asked to draw the inference has itself been proven beyond a reasonable doubt; and (b) that the inference asked to be drawn is not only logical and reasonable but is strong enough so that you can find that it is more probable than not that the fact to be inferred is true. It is your right to draw inferences if you conclude that the facts you have found proven . . . reasonably establish other facts by reason and logic and are not the result of speculation, surmise or guesswork."

In a subsequent instruction pertaining to intent, the trial court explained that "it is proper and usually necessary to infer intent . . . provided only that the inferences are reasonable ones." In the same instruction, the trial court charged the jury: "It is for you, the jury, to decide from the evidence you believe whether the state has proved beyond a reasonable doubt the defendant had, at the time and place of the alleged commission of the offenses charged, the required intent to have committed such an offense or offenses."

The "more probable than not" language challenged in this case is substantially similar to jury instructions on circumstantial evidence considered recently by this court and by our Supreme Court. See *State* v. *Hufford,* supra; *State* v. *McDonough,* 205 Conn. 352, 533 A.2d 857 (1987); *State* v. *Walker,* 9 Conn. App. 373, 519 A.2d 83 (1986); *State* v. *Farrar,* 7 Conn. App. 149, 508 A.2d 49, cert. denied, 200 Conn. 805, 512 A.2d 229 (1986).

While the challenged charge has consistently been held to be erroneous, "such error is not reversible unless it can be shown that it was reasonably possible that the jury was 'misled [by the charge] to believe that they were to apply any standard other than that of "beyond a reasonable doubt" in determining the guilt of the accused.' *State* v. *Miller,* [202 Conn. 463, 491–92, 522 A.2d 249 (1987)]; *State* v. *Robinson,* [204 Conn. 207, 210–11, 527 A.2d 694 (1987)]; *State* v. *Whelan,* [200 Conn. 743, 756–57, 513 A.2d 86, cert. denied, 479 U.S. 994, 107 S. Ct. 597, 93 L. Ed. 2d 598 (1986)]." *State* v. *Hufford,* supra, 407.

These recent cases make clear that a jury instruction on circumstantial evidence must be reviewed with reference to the principal disputed issues. "In considering the harmfulness of an erroneous instruction on circumstantial evidence, we have distinguished between cases where circumstantial evidence is the primary proof of an element of the crime and those where direct testimony plays the major role. 'Where the principal factual issue at trial is intent, which is typically proven by circumstantial evidence, "we will closely scrutinize the court's instructions" on circumstantial evidence, in isolation from the remainder of the charge, to determine whether the court misled the jury as to the state's burden of proof.' *State* v. *Robinson,* 204 Conn. 207, 210, 527 A.2d 694 (1987). Unlike intent, such issues as identity and whether the crime charged has occurred, are ordinarily proved by direct testimony with circumstantial evidence playing a subordinate role. 'Accordingly, we review the court's instruction not in isolation, but in the context of the charge as a whole, to determine whether it is " ' "reasonably possible that the jury was misled" ' " by an erroneous explanation regarding the use of circumstantial evidence.' Id." *State* v. *McDonough,* supra, 358.

The defendant argues that the instruction to the jury permitted the jury to infer his intent in committing the crimes charged by the state. As both the defendant and the state correctly point out, however, the principal disputed issue in this case was not intent but identity. Both parties relied primarily on direct evidence relevant to the issue of identity. The state presented eyewitness testimony that the defendant threw the bottle at the police officers and that he resisted arrest, while the defendant presented eyewitness testimony that the bottle was not thrown by him and that he did not resist arrest.

Our examination of the jury charge as a whole indicates that the trial court properly instructed the jury that it must find the existence of each essential element of each crime charged beyond a reasonable doubt. We hold, therefore, that the trial court's instruction concerning circumstantial evidence, although erroneous, could not reasonably have misled the jury as to the state's burden of proving the defendant's guilt beyond a reasonable doubt and, thus, was harmless.

B

The defendant claims that in its charge to the jury, the trial court erred in its comments on the evidence relating to the crime of assault on a peace officer. Although the defendant did not preserve properly this issue for appeal, we will review it under *State* v. *Evans,* supra, because this claim implicates the defendant's "constitutional right to a jury trial and due process of law in light of the assertion that the court effectively directed the jury on some of the factual issues by virtue of its comments on the evidence . . . ." *State* v. *Collette,* 199 Conn. 308, 316 n.6, 507 A.2d 99 (1986).

In the course of its instructions, the trial court stated to the jury: "In order to convict the defendant, the prosecution must prove beyond a reasonable doubt:

(1) that the victim of the assault was a reasonably identified police officer. In commenting on the evidence, let me say here that *there is evidence that the officers that were . . . injured . . . struck, were both police officers,* both in their uniforms. *And I do not think there is any evidence to contradict that;* (2) that the defendant caused physical injury to such peace officer. Now, *whether or not the defendant caused such injury is something that you in your own minds have to decide. But there is no dispute that a physical injury was caused;* and (3) that the defendant had the specific intent to prevent the peace officer from performing his lawful duty." (Emphasis added.)

Although a trial court may, in its discretion, make reasonable comments on the evidence; *State* v. *Schoenbneelt,* 171 Conn. 119, 124, 368 A.2d 117 (1976); it may not direct or advise the jury on how to decide the case. *State* v. *Storlazzi,* 191 Conn. 453, 465, 464 A.2d 829 (1983); *State* v. *Nims,* 8 Conn. App. 631, 640, 513 A.2d 1280, cert. denied, 201 Conn. 812, 516 A.2d 887 (1986). This rule is premised on a criminal defendant's constitutional right to have issues of fact decided by a jury and not by a court. *State* v. *Hines,* 187 Conn. 199, 210, 445 A.2d 314 (1982).

The defendant argues that "[b]y his plea of not guilty the defendant put in issue every element of the crime[s] charged"; *State* v. *Johnson,* 190 Conn. 541, 550, 461 A.2d 981 (1983); and, therefore, the court's comments effectively directed the jury on how to decide the factual elements of "peace officer" and "physical injury." We agree with the defendant's contention that his failure to present contradictory evidence on the facts testified to by the state does not mean that the defendant has conceded or verified the state's position, nor does it mean that the jury might not find a reasonable doubt to exist on that factual issue. "It is . . . inappropri-

ate to tell the jury that a portion of the government's evidence is 'undisputed,' as 'all issues not affirmatively conceded are "disputed" on a plea of not guilty,' and 'to tell the jury that something is undisputed may well suggest that it is conceded.' If the court wishes to comment on the evidence, or to summarize the evidence, it should ordinarily do so in a manner that does not reflect on the defendant's failure to offer rebuttal." *Flaherty* v. *United States,* 355 F.2d 924, 926 (1st Cir. 1966).

Although it was error for the court to comment on the evidence in the manner that it did, it was harmless error. " 'It has been established by repeated decisions in this State that a court, in submitting a case to the jury, may, at its discretion, call the attention of the jury to the evidence, or lack of evidence, bearing upon any point of evidence in issue in the case, and may comment upon the weight of the evidence, so long as it does not direct or advise the jury how to decide the matter . . . .' *State* v. *Cabaudo,* 83 Conn. 160, 163, 76 A. 42 (1910)." *State* v. *Nims,* supra, 640–41. "The ultimate test of the charge is whether, read in its entirety, it fairly presents the case to the jury so that no injustice is done . . . ." *State* v. *Storlazzi,* supra, 466. "Individual comments are not to be judged in isolation from the charge as a whole; *State* v. *Moss,* 189 Conn. 364, 367, 456 A.2d 274 (1983); *State* v. *Reed,* 174 Conn. 287, 305, 386 A.2d 243 (1978); and should be examined not in a vacuum, but in the context of the factual issues raised at trial. *State* v. *Kurvin,* 186 Conn. 555, 558, 442 A.2d 1327 (1982)." *State* v. *Collette,* 199 Conn. 308, 316–17, 507 A.2d 99 (1986).

Examining the challenged statements in the context of the entire charge, we are confident that the trial court did not direct or advise the jury on how to decide the case. The court on several occasions instructed the

jurors that they were the judges of the facts in issue.[9] The court also instructed the jury that the credibility of the witnesses and the weight to be given their testimony were matters specially within their province to determine, and that the testimony of a police officer was entitled to no special privilege. Finally, the jury was instructed that the state bore the burden of proving every essential element of the crimes charged beyond a reasonable doubt. Furthermore, with reference to the jury's function, the trial court defined the term "physical injury" for the jury, which would have been unnecessary had the jury been foreclosed from independently considering the issue of whether injury occurred. Subsequently, the jury was instructed that it was necessary to find "that the defendant's conduct resulted in the officer sustaining physical injury" in order to convict. The defendant does not contest that a physical injury was caused but does contest that *he* caused it. There is no basis for a finding of reversible error. The court clearly and unequivocally charged the jurors that it was their duty to find the facts, that their recollection of the facts controlled, and that the state had the burden of proving every element of the crimes charged beyond a reasonable doubt. *State* v. *Benite,* 6 Conn. App. 667, 679, 507 A.2d 478 (1986). The instructions given fairly and correctly presented the case to the jury.

---

[9] The trial court instructed the jury: "It is my right to make comments to you as to the weight of the evidence, as to whether or not it is proper for you to find certain facts from the evidence. But where I do undertake to make such comments, they are merely suggestive for you to approve or disapprove. . . . My chief concern with the facts is to refer to them should I . . . feel it necessary in order to make clear to you the application of the relevant rules of law. If I do refer to certain facts or evidence, you are not to assume that I mean to emphasize those facts or that evidence . . . and . . . you must not limit your consideration only to the facts that I relate to you. Should I not mention any evidence, you will supply it from your own recollection. And should I incorrectly state any evidence, you will correct my error and apply your own recollection. . . . It is only your own recollection of the facts and evidence which should have weight in your deliberations."

## V

The defendant's final claim of error concerns the requirement, under the sixth amendment to the United States constitution, applicable to the states through the fourteenth amendment, that the verdicts of six member juries be unanimous. *Burch* v. *Louisiana,* 441 U.S. 130, 99 S. Ct. 1623, 60 L. Ed. 2d 96 (1979). The defendant claims that the trial court's charge on assault on a peace officer "judicially sanctioned a non-unanimous verdict." *United States* v. *Gipson,* 553 F.2d 453, 457 (5th Cir. 1977). Although the defendant failed to preserve this claim at trial, we will review it under the *Evans* doctrine. *State* v. *Milledge,* 8 Conn. App. 119, 122, 511 A.2d 366 (1986); *State* v. *West,* 3 Conn. App. 650, 654–55, 491 A.2d 428, cert. denied, 196 Conn. 810, 494 A.2d 906 (1985).

The crime of assault on a peace officer is defined in four subsections to General Statutes § 53a-167c. Two of the subdivisions, § 53a-167c (a) (1) and (a) (2), are involved in this case. The trial court initially instructed the jury that the defendant was charged with violating subsection (a) (1), which provides: "A person is guilty of assault of a peace officer . . . when, with intent to prevent a reasonable identifiable peace officer . . . from performing his duty, (1) he causes physical injury to such peace officer . . . ." Subsequently, the trial court informed the jury that he had omitted a portion of the statute and instructed the jury that the defendant was also charged with violating subsection (a) (2), which provides: "A person is guilty of assault of a peace officer . . . when, with intent to prevent a reasonable identifiable peace officer . . . from performing his duty . . . (2) he throws or hurls, or causes to be thrown or hurled, any rock, bottle, can or other article, object or missile of any kind capable of causing physical harm, damage or injury, at such

peace officer . . . ." In the general instructions, the jurors were told that their verdict must be unanimous. In response to a jury question, both subdivisions of § 53a-167c were stated again to the jury. The trial court also explained that the element of intent applied to both subsections but that it was not necessary that the elements of both subsections be found in order to convict.

The defendant claims that, in light of the fact that the verdict was a general one, his right to a unanimous verdict was violated because the trial court failed to instruct the jurors that they must unanimously agree as to which of the two statutory subsections they believed the defendant had violated in order to find him guilty of assault on a peace officer. In support of his claim, the defendant relies on the Fifth Circuit Court of Appeals decision in *United States* v. *Gipson,* supra.

In *Gipson,* the government charged the defendant with selling or receiving a stolen vehicle moving in interstate commerce in violation of 18 U.S.C. § 2313. The trial court instructed the jurors that they need not agree on which of the six activities prohibited by the statute (receiving, concealing, storing, selling, bartering, or disposing of a stolen vehicle) the defendant had committed. The Court of Appeals reversed on the ground that the instructions effectively denied the defendant of his right to a unanimous verdict. The rationale articulated in *Gibson* was that the federal statutory offense prohibited two distinct types of conduct: (1) the act of keeping the vehicle, defined as receiving, concealing, or storing; and (2) the act of marketing the vehicle, defined as selling, bartering and disposing. The court noted that the prosecution had presented evidence showing that the defendant had committed each of the six acts. Because the two groups of acts were conceptually distinct, the court concluded that "a jury finding of the actus reus element of the offense would not be 'unanimous' if some of the jurors

thought that the defendant committed only an act in the first conceptual grouping while others believed he committed an act only in the second." *United States* v. *Gipson,* supra, 458. Under such circumstances, the jurors should be instructed that they must unanimously agree on the same alternative.

Both this court and our Supreme Court have implicitly adopted the holding and rationale of *Gipson;* see *State* v. *Jones,* 193 Conn. 70, 475 A.2d 1087 (1984); *State* v. *Benite,* supra, 674; *State* v. *West,* supra; and have clarified the *Gipson* rule in this state. Where a trial court charges a jury that the commission of any one of several alternative acts would subject a defendant to criminal liability, a unanimity charge on a specific act is required only if two conditions are met: (1) the alternative acts are *conceptually distinct* from each other; *and* (2) the state has presented *supporting evidence* on each alternative act. *State* v. *Benite,* supra, 674–75.

Applying this rule, we conclude that the first condition is not satisfied; the two acts which will expose an individual to punishment for assault on a peace officer are not, on the facts of this case, conceptually distinct from one another. The conduct prohibited by General Statutes § 53a-167c (a) (1) is causing physical injury to a peace officer with the intent to prevent the officer from performing his duty. This subsection requires that the defendant inflict bodily injury. He need not, however, have any bottle or object. In contrast, § 53a-167 (a) (2) prohibits an individual from throwing or causing to be thrown a bottle or any other object capable of inflicting harm at a peace officer with the intent to prevent the officer from performing his duty. This subsection requires that a bottle or other object be thrown at a police officer but it does not require that any actual injury result. Although there are differences between the two subsections of § 53a-167c, there was

no possibility that the jury was misled in this case. There could be no dispute that the jury agreed on essentially what conduct the defendant had committed. Compare *State* v. *Benite,* supra, 675.

The only evidence of physical injury presented by the prosecution concerned a head injury inflicted when Officer Stacoffe was struck by a bottle. Any juror who may have concluded that the defendant caused physical injury also must have found that the defendant threw the bottle. Thus, the verdict of guilty on the assault charge necessarily encompassed unanimity at least with respect to subsection (a) (2) of § 53a-167c. No juror could have reasonably found that the defendant caused injury without also finding that the defendant threw the bottle. We emphasize the point that the defendant has conceded in his brief that the conviction for assault on a peace officer must necessarily have been predicated upon that conduct of the defendant which involved throwing a beer bottle at the officers. Therefore, unlike *Gipson,* the evidence and jury charge did not permit "significant disagreement among the jurors as to what [the defendant] did." *United States* v. *Gipson,* supra, 458–59. In this case, therefore, these subsections were not conceptually distinct. We hold that the defendant's right to a unanimous jury verdict as to the crime of assault on a peace officer was not violated.

There is error in Appeal No. 4132, the judgment is set aside as to the defendant's conviction of the crime of interference with an officer and the case is remanded to the trial court with direction to render judgment for the defendant on that count. There is no error in Appeal No. 4153.

In this opinion the other judges concurred.