[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISIONRE: DEFENDANT'S MOTION TO DISMISS
Defendant having been arrested by warrant and charged with Reckless Endangerment in the second degree in violation of § 53a-64
has moved that the charge be dismissed claiming that as applied to the facts in this case the statute is unconstitutionally vague.
As yet no long form information has been filed. The state and defendant have agreed that for the purposes of this motion the facts are stipulated to be as set forth in the affidavit accompanying and causing the warrant as set forth in the record and the court's file.
This is not a case where the defendant claims that the statute is void for vagueness in its face. The defendant claims that the CT Page 6818 statute is void for vagueness only as applied to the facts of this case.
The facts, as far as applicable are:
Defendant stored an unloaded revolver on a shelf in his unlocked bedroom closet. A box of shells fitting the revolver was also stored on the same shelf.
The defendant's three children were home alone on a school holiday, Veteran's Day, November 11, 1993 at about 1:30 p. m. The children heard what they tend robe an intruder attempting to enter home the home through a downstairs' window. The defendant's son, Michael, got the revolver from his father's closet, loaded it and went to fend off the intruder. In the process he accidently [accidentally] shot his eight year old sister in the left thigh.
The defendant claims that § 53a-64 when considered with § 29-37i
and § 53a-217 renders the reckless endangerment statute unconstitutionally vague under the facts of this case when applied to cases concerning firearm storage.
In short the defendant claims that the court should grant his motion to dismiss because General Statutes § 53a-64, reckless endangerment in the second degree, as applied to the facts in this case, is unconstitutionally void for vagueness in light of Connecticut's specific firearm storage statutes.
Both General Statutes § 54-56 and Practice Book § 815 govern a motion to dismiss. "Section 54-56 permits the court to dismiss an information `at any time, upon motion by the defendant . . . if . . . there is not sufficient evidence or cause to justify a bringing or continuing of such information . . . .'" State v. Dills, 19 Conn. App. 495,499, 563 A.2d 733 (1989).
The defendant's does not bring his claim under § 54-56 of the General Statutes. His claim is based on Practice Book § 815(8).
Practice Book § 815 permits various "defenses and objections, if capable of determination without a trial of the general issue, . . ." to be raised in a motion to dismiss. In particular, § 815(8) permits a "claim that the law defining the offense charged is unconstitutional or otherwise invalid." The defendant's motion dismiss the information on vagueness grounds falls within Practice Book § 815(8). CT Page 6819
In raising his vagueness claim, the defendant relies on his rights to due process under the fourteenth amendment of the United States Constitution and article first, § 8 of the Connecticut Constitution. The court may refuse to analyze the defendant's vagueness claim under the state constitution because the defendant has provided no independent analysis under the Connecticut Constitution. See State v. Culmo, 43 Conn. Sup. 46, 47 n. 2, ___ A.2d ___ (August 3, 1993, Levine, J.), citing State v. Mercer,208 Conn. 52, 67 n. 9, 544 A.2d 611 (1988). Moreover, the Connecticut Appellate Court, in the context of a vagueness claim against a statute prohibiting a person from interfering with the legislative process, noted that "[t]he due process provisions of the state and federal constitutions have a similar meaning." (Citations omitted.) State v. Linares, 32 Conn. App. 656, 661 n. 9.,630 A.2d 1340 (1993). Therefore, this court need only analyze the defendant's claim under the fourteenth amendment of the United States Constitution.
The Connecticut Supreme Court recently addressed a claim that Connecticut's disorderly conduct statute, § 53a-182, was unconstitutionally vague under the fourteenth amendment of the United States Constitution. State v. Indrisano, 228 Conn. 795,802, ___ A.2d ___ (1994). That court's analysis in Indrisano
controls the present case.
According to the court in Indrisano, the vagueness doctrine "requires statutes to provide fair notice of the conduct to which they pertain and to establish minimum guidelines to govern law enforcement." Id. The court based its analysis on the United States Supreme Court's three standards for evaluating vagueness.
 `First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly.
 Vague laws may trap the innocent by not providing fair warning.' `[A] law forbidding or requiring conduct in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates due process of law.' CT Page 6820 `Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissible delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory applications.' Therefore, `a legislature [must] establish minimal guidelines to govern law enforcement.' `Third, where a vague statute abut[s] upon sensitive areas of basic First Amendment freedoms, it operates to inhibit the exercise of [those] freedoms. Uncertain meanings inevitably lead citizens to steer wider of the unlawful zone . . . than if the boundaries of the forbidden areas were clearly marked.'
(Citations omitted.) Id., 802-03.
The court in Indrisano also noted that it would "`indulge in every presumption in favor of the statute's constitutionality . . . .'" Id., 805. Furthermore, the court stated that it would consider any prior interpretations that Connecticut courts of appeals have placed on the statute. Id. Thus, "[t]o challenge successfully the vagueness of the statute as applied to the facts of his case, the defendant must prove that the policies advanced by the vagueness doctrine were violated in his case." Id., 813. "Specifically, the defendant must show that a reasonable person could not have foreseen that the statute would be applied to his conduct, or that he was the victim of arbitrary enforcement practices." (Citation omitted.) Id.
When analyzing penal statutes, a court must construe the statutory language strictly to avoid imposing criminal liability where the legislature intended none. See id., 809. "It is not necessary, however, that a statute list the precise conduct prohibited or required . . . . It is recognized that the law may be general in nature . . . . " (Citation omitted.) State v. White,204 Conn. 410, 415, 528 A.2d 811 (1987).
In particular, § 53a-64 provides that "[a] person is guilty of reckless endangerment in the second degree when he recklessly engages in conduct which creates a risk of physical injury to another person." General Statutes § 53a-3 specifically defines the CT Page 6821 terms "person," "recklessly" and "physical injury."
General Statutes § 53a-3 (1) states that "`[p]erson' means a human being . . . . " Moreover, according to § 53a-3 (13),
 [a] person acts `recklessly' with respect to a result or to a circumstance described by a statute defining an offense when he is aware of and consciously disregards a substantial and unjustifiable risk that such result will occur or that such circumstance exists. The risk must be of such nature and degree that disregarding it constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation.
"This concept, much like the concept of recklessness under the present reckless driving statute [Sec. 14-222,], requires conscious disregard of a substantial and unjustifiable risk. But this disregard must be a gross deviation from the standard of a reasonable man". Commission Comment 1971. Commission to Revise the Criminal Code.
In addition, § 53a-3 (3) states that "`[p]hysical injury' means impairment of physical condition or pain."
The terms in § 53a-64 that are not defined by statute include "engages," "conduct," "creates" and "risk." Where "a statute . . . does not sufficiently define a term, it is appropriate to look to the common understanding of the term as expressed in a dictionary."State v. Indrisano, supra, 228 Conn. 809, citing General Statutes § 1-1(a). The American Heritage Dictionary defines the terms as follows: "engage" means to involve oneself or become occupied; participate; "conduct" means the way a person acts; behavior; "creates" means to cause to exist; "risk" means the possibility of suffering harm or loss; danger. Black's Law Dictionary defines the same terms as follows: "engage" means to employ or involve one's self; to take part in; to embark on; "conduct" means personal behavior; "creates" means to bring into being; to cause to exist; to produce; "risk" means the element of uncertainty in an undertaking.
A person is guilty of reckless endangerment in the second degree when the person is aware of, and consciously disregards a substantial and unjustifiable risk when participating in behavior CT Page 6822 that produces the possibility of impairment of physical condition or pain to another human being.
There is no appellate authority addressing the issue of whether § 53a-64 is unconstitutionally vague. Moreover, only a few courts in other states have decided vagueness claims based on reckless endangerment statutes. See, e.g., Miller v. State,449 N.E.2d 1119 (Ind.App. 3 Dist. 1983) (finding that Indiana's criminal recklessness statute[1] is not unconstitutionally vague on its face or in its application); State v. Hanson, 256 N.W.2d 364
(N.D. 1977) (holding that North Dakota's reckless endangerment statute[2] is not unconstitutionally vague); People v.Lucchetti, 305 N.Y.S.2d 259 (1969) (stating in a memorandum decision that New York's reckless endangerment in the second degree statute[3] is neither unconstitutionally vague nor indefinite).
Nevertheless, the Connecticut Appellate Court and the Appellate Session of the Superior Court have analyzed § 53a-64 in the context of claims other than vagueness. For example, in the context of a double jeopardy claim, the Connecticut Appellate Court stated that the elements of § 53a-64 are "(1) recklessly (2) engages in conduct (3) which creates a risk of physical injury (4) to another person." State v. Flynn, 14 Conn. App. 10, 20,539 A.2d 1005 (1988) (holding that reckless endangerment in the second degree is not a lesser included offense of assault on a peace officer), cert. denied, 488 U.S. 891, 109 S.Ct. 226 (1988).
Moreover, the Appellate Session of the Superior Court, in rejecting a defendant's attack on a jury charge, held that the exact statutory language of the definition of "unjustifiable risk," as it relates to the offense of reckless endangerment in the second degree, is clear and not misleading and does not present concepts which would prevent an ordinary juror from understanding its meaning. State v. Pemberton, 38 Conn. Sup. 619, 624-25,458 A.2d 11 (Appellate Session, Superior Court, 1982).
In addition, the Appellate Session of the Superior Court analyzed the "reckless" element of § 53a-64, in light of the facts of the case, which involved firearm safety and a defendant familiar with firearms. State v. Ghiloni, 35 Conn. Sup. 570, 573,398 A.2d 1204 (Appellate Session, Superior Court, 1978) (upholding conviction of defendant for reckless endangerment in the second degree). Specifically, the court examined the objective and subjective yardsticks set by § 53a-3 (13) to determine whether the defendant acted recklessly. Id. In that case a witness to an CT Page 6823 assault fired a pistol from a third floor window to attempt to keep two assailants from leaving the scene of assault.
The defendant claims that in light of Connecticut's specific firearm storage statutes, § 53a-64 is unconstitutionally vague as applied to his situation. The specific firearm statutes that the defendant refers to are General Statutes § 53a-217a and 29-37c. In particular, General Statutes § 53a-217a provides that "[a] person is guilty of criminally negligent storage of a firearm when he violates the provisions of section 29-37c and a minor obtains the firearm and causes the injury or death of himself or any other person." Section 29-37c, which was transferred to § 29-37i in 1993, states that
 [n]o person shall store or keep any loaded firearm on any premises under his control if' he knows or reasonably should know that a minor is likely to gain access to the firearm without the permission of the parent or guardian of the minor unless such person (1) keeps the firearm in a securely locked box or other container or in a location which a reasonable person would believe to be secure or (2) carries the firearm on his person or within such close proximity thereto that he can readily retrieve and use it as if he carried it on his person.
Both § 29-217a and § 29-37c now § 29-37i define "minor" as "any person under the age of sixteen years."
Since we don't know if Michael, the child who took the gun, loaded it, and accidently [accidentally] shot his sister, was under sixteen years of age — or for that matter whether he had permission "to gain access to the firearm", these statutes cited by the defendant are inapplicable to this case at this time.
At a later stage of this case evidence may be introduced that Michael was under the age of sixteen years at the time-in-question and/or did not have permission to gain access to the firearm.
The legislative history to § 53a-217a, which encompasses § 29-37i, indicates that the legislature intended § 53a-217a to apply only to loaded firearms.[4] According to Representative Godfrey, the legislative intent of a loaded firearm is "a weapon with any rounds CT Page 6824 in it, either in the chamber or in the magazine." 33 H.R. Proc., Pt. 4, 1990 Sess., p. 7481.
The legislative history of § 53a-217a also indicates that the legislature considered a fact situation identical to the present case. In particular, Representative Radcliffe raised the following hypothetical: "[a]n individual leaves the house, personally leaves an unloaded weapon in close proximity to ammunition which is within ready access or reach of children before leaving the home. Can that individual, given the fact that the gun is unloaded although in close proximity to ammunition, be prosecuted under this particular statute . . . ?" 33 H.R. Proc., Pt. 4, 1990 Sess., p. 7487. Rep. Godfrey, in response, stated that "[t]he simple answer to that is no." 33 H.R. Proc., Pt. 4, 1990 Sess., p. 7487. Rep. Godfrey later added that "[o]f course, there may be other civil orcriminal liability that may accrue under other parts of our law.
(Emphasis added.) 33 H.R. Proc., Pt. 4, 1990 Sess., p. 7489.
The child who was shot was eight years of age. We cannot tell from the affidavit the age of the other two children who were home at that time. The affidavit states that the children were home alone because school was closed due to a holiday, Veteran Day, see § 104, November 11, 1993. The other children as far as can be determined from the affidavit, could have been either grammar or high school students. The age of the children, at least the age of the child who went to the shelf in the father's closet, took the revolver, loaded it and went off to protect the home from what he thought was an intruder, may be a critical factor in this case. Nor do we know how high from the closet floor was the shelf on which the unloaded gun and ammunition were stored.
Even, assuming that the state can establish that the age and permission statutory requirements are met, § 53a-64, as applied to the present case, is not unconstitutionally vague when analyzed under the three standards for evaluating vagueness as set forth by the court in State v. Indrisano, supra, 228 Conn. 802-03.
First, a reasonable person could have foreseen that § 53a-64, in light of its language and case law, coupled with the complementary purpose of § 53a-217a, would be applied in the present case. The risk posed by leaving four handguns and a shotgun accessible to young children, home alone on a school holiday, where the unloaded weapons are left with live ammunition in the same unlocked bedroom closet, is of such a nature and degree that disregarding it constitutes a gross deviation from the standard of CT Page 6825 conduct that a reasonable person would use.[5] Furthermore, the defendant, who was familiar with firearms, as demonstrated by his license to carry handguns, should have known that leaving firearms and ammunition together with children alone in the house posed a substantial and unjustifiable risk of physical injury to the children or others, and yet he disregarded that risk.
Moreover, the legislature is presumed to act "`with existing relevant statutes in mind, and with the intention of creating a consistent body of law.'" State v. Ellis, 197 Conn. 436, 445,497 A.2d 974 (1985). Thus, although the legislature intended § 53a-217a
to apply only to loaded firearms, the legislature recognized that other criminal laws exist to cover the myriad situations that might arise outside the narrow scope of § 53a-217a. See 33 H.R. Proc., Pt. 4, 1990 Sess., p. 7489. The disparity in the criminal penalties attached to § 53a-217a and § 53a-64 illustrates the legislature's intent that the two statutes be read to complement each other. Criminally negligent storage of a firearm is a class D felony. A person convicted of a class D felony may be imprisoned for up to five years. See General Statutes § 53a-35a. In contrast, reckless endangerment is only a class B misdemeanor, which subjects one convicted to no more than six months imprisonment. See General Statutes § 53a-36.
Second, the defendant was not the victim of arbitrary enforcement practices because § 53a-64 sets forth explicit standards for law enforcement. Because the police obtained an arrest warrant, there existed a judicial interposition that served to protect the defendant from arbitrary and discriminatory enforcement by the police. See State v. Dills, supra, 19 Conn. App. 501.
Third, the Connecticut Supreme Court has noted that "[a] disorderly conduct statute that applies generally to prohibit physical violence and physically threatening behavior . . . avoidsfirst amendment difficulties." State v. Indrisano, supra,228 Conn. 814. Similarly, reckless endangerment in the second degree, which applies generally to prohibit reckless conduct, which creates a risk of injury to another person, avoids first amendment problems. Section 53a-64 does not threaten to inhibit the exercise of any other constitutionally protected rights, such as the right to bear arms. Therefore the present case does not require "`a more stringent vagueness test.'" (Citation omitted.) Id.
In sum, § 53a-64 is not void for vagueness as applied to the facts in the present case under the fourteenth amendment of the CT Page 6826 United States Constitution and article first, § 8 of the Connecticut Constitution and therefore the defendant's motion to dismiss is denied.
Joseph B. Clark, Judge