## STATE OF CONNECTICUT *v.* EDWARD A. PERUTA
## (9060)

DUPONT, C. J., LANDAU and HEIMAN, Js.

Argued January 10—decision released May 14, 1991

*C. Michael Budlong,* with whom, were *Steven R. Dembo* and, on the brief, *Terence S. Ward* and *Kathleen A. Murrett,* for the appellant (defendant).

*Jack W. Fischer,* deputy assistant state's attorney, with whom, on the brief, were *John T. Redway,* state's attorney, and *Philip Scarpellino,* assistant state's attorney, for the appellee (state).

HEIMAN, J. The defendant appeals from the judgment of conviction, rendered after a jury trial, of interfering with an officer in violation of General Statutes § 53a-167a.[1] The defendant claims that (1) the trial court improperly instructed the jury on the element of intent, (2) the trial court improperly denied the defendant's request for a continuance, (3) the jury rendered a verdict that was contrary to law, (4) the trial court improperly failed to charge the jury on the effects of General Statutes §§ 7-313b and 7-313e, (5) the prosecutor's closing remarks were prejudicial, and (6) the trial court improperly allowed a surprise witness to testify. We affirm the judgment of the trial court.

The jury could reasonably have found the following facts. During peak morning traffic hours on October 23, 1989, the Cromwell police were called to the scene of a fatal automobile accident at the intersection of Route 72, Industrial Park Road and the southbound ramp of Interstate 91. Officer Kevin Vandersloot, the first offi-

[1] General Statutes § 53a-167a provides: "INTERFERING WITH AN OFFICER: CLASS A MISDEMEANOR. (a) A person is guilty of interfering with an officer when he obstructs, resists, hinders or endangers any peace officer or fireman in the performance of his duties.

"(b) Interfering with an officer is a class A misdemeanor."

cer to arrive at the scene, gave medical attention to the accident victims until additional emergency personnel arrived.

When Lieutenant Anthony Salvatore arrived a few minutes later, an ambulance, police vehicles and volunteer fire personnel were at the scene. One of the accident victims was on the ground receiving CPR and Salvatore was informed that the Life Star helicopter was en route to transport this victim to a hospital. The vehicles that had been involved in the accident were in the middle of the intersection and traffic was nearly at a standstill.

Salvatore, who was treating the area as a major crime scene, began to attempt to maintain some limited traffic flow so he could clear a portion of the road to establish a landing zone for the Life Star helicopter. Salvatore was also concerned that the accident area be kept secure so his officers could gather all necessary evidence from the scene. To accomplish the latter, it was essential that all unnecessary personnel and onlookers be kept from the immediate vicinity of the accident. To assist in controlling traffic and to aid in the investigation, Salvatore recalled two officers from the midnight shift and asked for assistance from the Middletown and state police departments. Salvatore also called the news media and requested a broadcast to notify motorists to avoid the area.

The defendant, who is the chief photographer for American News and Information Services, arrived shortly after Salvatore. When Salvatore noticed that the defendant was videotaping from the center of the westbound traffic lane, he asked the defendant to move to either shoulder of the roadway. The defendant and Salvatore exchanged words for four or five minutes before the defendant finally moved to the westbound shoulder of the road.

A few minutes later, Salvatore noticed that Vandersloot, the main investigator, was involved in a confrontation with the defendant, who was now videotaping from the narrow space between Vandersloot's car and Salvatore's car, in the immediate vicinity of the accident. Salvatore approached the men, relieved Vandersloot, and asked the defendant to stay out of the area, telling him that he would be arrested if he did not comply with that request. The defendant refused to move, insisted that the chief of police had given him permission to be where he was and told Salvatore that he had a constitutional right to be there and asserted that Salvatore had no authority to tell him to leave. At this point, Salvatore ordered Detective Ronald Cornell, who had just arrived at the scene, to arrest the defendant.

I

The defendant first claims that the trial court's charge was constitutionally infirm because (1) the jury was not instructed that intent was an element of the crime, (2) the court's comments on intent were ambiguous, and (3) there was no general instruction on intent that would have cured the first two infirmities. The defendant failed to raise this claim at trial by objecting to the jury instructions that were given, or by filing an appropriate request to charge. Practice Book § 852. He now seeks appellate review under the bypass rule of *State* v. *Evans,* 165 Conn. 61, 70, 327 A.2d 576 (1973), as reformulated in *State* v. *Golding,* 213 Conn. 233, 239–40, 567 A.2d 823 (1989).

Our Supreme Court has held that "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly

deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail." (Emphasis in original.) *State* v. *Golding,* supra. In this case, we will assume a constitutional violation,[2] and then engage in a harmless error analysis under the fourth *Golding* prong, because a defendant cannot prevail if the state can demonstrate that any error was harmless beyond a reasonable doubt. *State* v. *Dyson,* 217 Conn. 498, 505–506, 586 A.2d 610 (1991).

In its general instructions to the jury, the trial court stated: "There are two essential elements of the crime of interfering with an officer: (1) that the defendant has obstructed, resisted, hindered, or endangered a police officer, and (2) that the conduct of the defendant occurred while the police officer was in the performance of his duties. . . . Now, from the evidence you've heard, you should consider whether the defendant obstructed, resisted, hindered a peace officer. In addition, you must then consider whether the defendant intended to interfere with the performance of the officer's duty. Accidental or inadvertent interference is not enough. You should consider the defendant's intention whether the defendant's intention was to get a better view to permit him to videotape the incident *and* whether he was far enough away so as to not disturb the evidence, *and* whether, from all the evidence, it was

---

[2] The defendant's contention that the court's instructions failed to adequately inform the jury of the essential elements of the crime charged raises the possibility of a due process violation that affected the fairness of the trial. The review of unpreserved constitutional claims on appeal has been limited because " '[d]ue process is not to be regarded as a giant constitutional vacuum cleaner which sucks up any claims of error which may occur to a party upon microscopic examination of the trial record.' " *State* v. *McMurray,* 217 Conn. 243, 253, 585 A.2d 677 (1991).

his intent to hinder, obstruct, or resist a peace officer in the performance of his duties. The purpose of the statute, which had its origin in the common law, is to enforce orderly behavior in the important mission of preserving the peace, and any act that is intended to thwart the purpose is violative of the statute. The defendant, however, must have acted with the intent to interfere with the performance of the officer's duties." (Emphasis added.)

"It is, of course, constitutionally axiomatic that the jury be instructed on the essential elements of the crime charged." *State* v. *Williamson,* 206 Conn. 685, 708, 539 A.2d 561 (1988). When reviewing a claim involving jury instructions that implicate a defendant's constitutional right, " '[t]he applicable test requires the state to prove beyond a reasonable doubt that, from the viewpoint of the charge as a whole, there is no reasonable possibility that the jury was misled.' *State* v. *Sinclair,* [197 Conn. 574, 584, 500 A.2d 539 (1985)]." *State* v. *Townsend,* 206 Conn. 621, 626, 539 A.2d 114 (1988).

Before the state can obtain a conviction for interference with an officer, one of the essential elements it must prove beyond a reasonable doubt is that the defendant's interference was intentional. *State* v. *Flynn,* 14 Conn. App. 10, 18, 539 A.2d 1005, cert. denied, 488 U.S. 891, 109 S. Ct. 226, 102 L. Ed. 2d 217 (1988). "A person acts 'intentionally' with respect to a result or to conduct described by a statute defining an offense when his conscious objective is to cause such a result or to engage in such conduct . . . ." General Statutes § 53a-3 (11).

In the present case, both parties have directed our attention to *State* v. *Wilson,* 17 Conn. App. 104, 550 A.2d 643, cert. denied, 210 Conn. 803, 553 A.2d 616 (1988). In that case, the defendant was charged with the same crime and we concluded that the jury charge

on intent was not constitutionally infirm. The state claims that the charge in the present case was nearly identical to that given in *Wilson.* The defendant, on the other hand, contends that although portions of the charge in this case are identical to that given in *Wilson,* this charge contained ambiguous remarks that could have misled the jury and included no general instructions on intent.

In the past, this court has ruled favorably on jury instructions on the charge of interfering with an officer only when the court has specified that intent is an essential element of the crime, or when it has given the definition of general intent as found in General Statutes § 53a-3 (11); see *State* v. *Wilson,* supra; see also *State* v. *Moore,* 23 Conn. App. 479, 482–83, 581 A.2d 1071 (1990). In the present case, the court neither instructed the jury that intent is an essential element of the crime of interfering with an officer, nor informed it of the statutory definition of intent.

To require reversal, an error in the court's charge to the jury must be harmful to the appellant. *State* v. *Concaugh,* 170 Conn. 95, 100, 365 A.2d 395 (1976). Despite the deficiency of the instructions in the present case, we conclude that any error in the court's charge was harmless because the charge given presented the case to the jury more favorably to the defendant than the charge to which he was entitled.

We have previously stated that it was the legislature's intention to prohibit *any act* that amounts to meddling in or hampering the activities of an officer in the performance of his duties. *State* v. *Beckenbach,* 1 Conn. App. 669, 679, 476 A.2d 591 (1984), rev'd on other grounds, 198 Conn. 43, 501 A.2d 752 (1985). In addition, General Statutes § 53a-3 (11) indicates that a defendant's intent is sufficient if it is his conscious

objective to cause a specific result, or to engage consciously in conduct that results in the accomplishment of the prohibited act.

Case law and § 53a-3 (11) indicate that the defendant was entitled to a charge that he could be found guilty if he either (1) intentionally moved into the immediate scene of the accident to obtain a better view after having been warned not to enter that area, or (2) moved into the forbidden area with the specific intention to hinder, obstruct or resist the officer. The charge that was actually given, however, could have led the jurors to conclude that moving in for a better picture alone was insufficient grounds upon which to convict the defendant. The jury reasonably could have concluded that it was also necessary to find that the defendant actually intended to interfere with the officer in order to convict. Despite this faulty, more favorable charge, the jury still rendered a guilty verdict. We see no reason to search for extravagant protection against errors that are obviously not prejudicial and that the defendant himself appears to have disregarded at trial. *State* v. *Kurvin,* 186 Conn. 555, 564, 442 A.2d 1327 (1982).

## II

The defendant next claims that the trial court improperly denied his motion for a continuance. We disagree.

The facts that are relevant to the resolution of this issue are as follows. Two days before the trial commenced, the state's attorney learned that Vandersloot had interacted with the defendant at the scene of the accident. The state then added Vandersloot's name to the list of witnesses and forwarded Vandersloot's one page report to defense counsel.

On the opening day of trial, the defendant made a motion in limine to preclude Vandersloot's testimony and to exclude from evidence his written report, claim-

ing surprise and prejudice. The court prohibited only the introduction of Vandersloot's written statement and advised the defendant, who had received the information on Thursday, March 22, 1990, that he would not be called upon to go forward with his case until Tuesday, March 27, and that he could recall Vandersloot later in the trial if he felt it necessary. The case went to trial on Friday, March 23, and Vandersloot testified over the defendant's objection. The defendant cross-examined Vandersloot and never recalled him.

" '[T]he decision to grant or deny a continuance lies within the discretion of the trial court. . . . Our inquiry on appeal is limited to whether the trial court abused its broad discretion. . . . "It must be shown that the trial judge acted arbitrarily and substantially impaired the defendant's ability to defend himself, before an appellate court will conclude that the trial judge abused his discretion." . . . ' " (Citations omitted.) *State* v. *Marra,* 195 Conn. 421, 436–38, 489 A.2d 350 (1986).

The court considered the defendant's request and delayed the proceedings for the period of time that it deemed appropriate under the circumstances. On the basis of the facts presented here, we cannot conclude that the trial court abused its discretion by refusing to delay the trial further, nor can we see how the defendant was harmed by the way in which the court responded to his request.

## III

The defendant next claims that the jury's verdict was contrary to law. He asserts that he could not have violated General Statutes § 53a-167a because fire personnel arrived at the scene before Salvatore, and, thus, the ranking fire officer was in charge of the scene by

reason of the provisions of § 7-313e.[3] He asserts that because no evidence was produced at trial indicating that Salvatore was acting under the direction of fire personnel that the state failed to prove that Salvatore was acting in the performance of his duties. This argument is without merit.

Nothing in the plain and unambiguous language of § 53a-167a indicates that criminal behavior attaches only if the officer who is interfered with is the officer in charge, or that the duties interfered with must have been performed at the explicit direction of the officer in charge. The plain and simple fact is that Salvatore testified that it was his duty to assist at the scene of a fatal accident and that the defendant interfered with

---

[3] General Statutes § 7-313e provides: "AUTHORITY OF FIRE OFFICER DURING EMERGENCY. Notwithstanding any provision in the general statutes or a municipal ordinance to the contrary, the fire chief of the municipality, or any member serving in the capacity of fire officer-in-charge, shall, when any fire department or company is responding to or operating at a fire, service call, or other emergency, within such municipality, have the authority to: (a) Control and direct emergency activities at such scene; (b) order any person to leave any building or place in the vicinity of such fire for the purpose of protecting such person from injury; (c) blockade any public highway, street, or private right-of-way temporarily while at such scene; (d) at any time of the day or night, enter any building, including a private dwelling, or upon any premises where a fire is in progress or near the scene of any fire, or where there is reasonable cause to believe a fire is in progress, for the purpose of extinguishing the fire or preventing its spread; (e) inspect for the purposes of preventing fires and preplanning the control of fire all buildings, structures or other places in their fire district, except the interior of private dwellings, where any combustible material, including but not limited to waste paper, rags, shavings, waste, leather, rubber, crates, boxes, barrels or rubbish, that is or may become dangerous as a fire menace to such buildings, structures or other places has been allowed to accumulate or where such chief or his designated representative has reason to believe that such material has accumulated or is liable to be accumulated; (f) order disengagement or discouplement of any convoy, caravan or train of vehicles, craft or railway cars for the purpose of extinguishing a fire or preventing its spread; and (g) take command of any industrial fire brigade or fire chief when such fire company or department has been called to such industry."

these duties. Police officers are not divested of authority because they are acting with fire personnel at an emergency site. Accordingly, we conclude that the jury's verdict was not contrary to law.

## IV

The defendant next claims that the trial court improperly refused to charge the jury on the effect of General Statutes §§ 7-313b[4] and 7-313e. In light of our conclusion that these sections do not apply to the charge of interference with an officer in violation of § 53a-167a, we decline to review this claim further.

## V

The defendant next claims that he was denied a fair trial by the prejudicial closing remarks of the prosecutor. The defendant did not object to the prosecutor's closing remarks at trial or seek a curative instruction. He now seeks review under the bypass rule of *State* v. *Evans,* supra, and *State* v. *Golding,* supra. Correctly identified, however, this unpreserved claim of prosecutorial misconduct is merely masquerading as a constitutional claim and therefore must be summarily dismissed.

"While we do not deny that prosecutorial misconduct of constitutional proportions may arise during the course of closing argument, thereby implicating the fun-

---

[4] General Statutes § 7-313b provides: "AUTHORITY OF FIRE DEPARTMENT OFFICER TO ORDER REMOVAL OF PERSONS. The officer of a fire company or a fire department in charge of directing the activities at a fire or other emergency to which his company or department responds shall have the authority to order any person to leave any building or place in the vicinity of such fire or emergency for the purpose of protecting such person from injury. Any person, upon being so ordered, who wilfully refuses to leave the vicinity of a fire or other emergency situation shall be fined not more than fifty dollars or imprisoned not more than seven days or both. The provisions of this section shall not apply to any person who has been issued a press card by the state police."

damental fairness of the trial itself . . . we have long held that *Evans* review of such a claim is unavailable where the claimed misconduct was not blatantly egregious and merely consisted of isolated and brief episodes that did not reveal a pattern of conduct repeated throughout the trial. . . . Although certain remarks made by the prosecutor, from hindsight, may be deemed imprudent, such isolated and brief episodes as occurred here fail to implicate the denial of the defendant's constitutional right to due process." (Citations omitted.) *State* v. *Somerville,* 214 Conn. 378, 393, 572 A.2d 944 (1990).[5] The defendant bears the burden of "demonstrating that his claim is indeed a violation of a fundamental constitutional right." *State* v. *Golding,* supra, 240. We conclude that, under the circumstances of this case, the prosecutor's remarks did not rise to the level of egregious misconduct that would implicate the defendant's constitutional right to due process.

## VI

The defendant's final claim is that the trial court improperly allowed Vandersloot to testify at trial, asserting that this testimony was irrelevant and prejudicial. We disagree.

---

[5] A representative example of the three passages from the prosecutor's closing argument that the defendant now objects to is as follows: "This guy wants to argue about the first amendment, the fourteenth amendment. He wants to argue these things while a man is dying, while the police are trying to control *hundreds of cars. There's no testimony to that effect. I don't know how many cars,* but certainly a traffic jam. And this guy wants to talk about amendments, after he's already gotten good shots."

It is imperative that we point out that it is not the prosecutor's qualifying language that saves his argument, but the·context of the argument as a whole. The privilege afforded to counsel in addressing the jury must never be used as a license to comment upon or draw an inference from facts not in evidence, or present matters to the jury that they have no right to consider. *State* v. *Falcone,* 191 Conn. 12, 22, 463 A.2d 558 (1983). It is a prosecutor's "duty . . . to see that justice is done and to refrain from improper methods calculated to produce prejudice and wrongful decisions by the jury." *State* v. *Malley,* 167 Conn. 379, 389, 355 A.2d 292 (1974).

610

A trial court has broad discretion in determining the relevancy of evidence; *State* v. *Boucino,* 199 Conn. 207, 225, 506 A.2d 125 (1986); and its ruling will be disturbed only upon a showing of a clear abuse of discretion. *State* v. *Fritz,* 204 Conn. 156, 167–68, 527 A.2d 1157 (1987). " 'Evidence is relevant only when it tends to establish the existence of a material fact or to corroborate other direct evidence in the case.' " *State* v. *Sharpe,* 195 Conn. 651, 659, 491 A.2d 345 (1985); *State* v. *Piskorski,* 177 Conn. 677, 695, 419 A.2d 866, cert. denied, 444 U.S. 935, 100 S. Ct. 283, 62 L. Ed. 2d 194 (1979).

Our review of the record indicates that the trial court properly admitted Vandersloot's testimony for the limited purpose of corroborating Salvatore's testimony and to substantiate what Salvatore saw and testified to. We conclude that the trial court did not abuse its discretion in allowing Vandersloot to testify.

The judgment is affirmed.

In this opinion the other judges concurred.