STATE OF CONNECTICUT *v.* EUGENE RUSSELL
(8540)
(8541)

FOTI, LAVERY and HEIMAN, Js.

Argued May 1—decision released July 16, 1991

*Elizabeth M. Inkster,* assistant public defender, with whom, on the brief, was *G. Douglas Nash,* public defender, for the appellant (defendant).

*Judith Rossi,* assistant state's attorney, with whom, were *Elpedio Vitale,* assistant state's attorney, and, on the brief, *Michael Dearington,* state's attorney, for the appellee (state).

HEIMAN, J. The above cases were consolidated for trial and tried to the jury. The defendant appeals from

the judgment of conviction of one count of assault in the first degree in violation of General Statutes § 53a-59 (a) (3),[1] three counts of risk of injury to a child in violation of General Statutes § 53-21,[2] one count of sexual assault in the first degree in violation of General Statutes § 53a-70 (a),[3] and one count of sexual assault in the second degree in violation of General Statutes § 53a-71 (a) (1).[4] The defendant claims that (1) his convictions for the crimes of sexual assault in the first degree and sexual assault in the second degree of the same victim violate his federal and state constitutional right against double jeopardy, (2) his conviction of three counts of risk of injury to a child as charged in the informations violates his federal and state constitutional right against double jeopardy, and (3) the prosecutor's remarks made during closing argument were prejudicial, thereby violating his right to a fair

---

[1] General Statutes § 53a-59 (a) (3) provides: "A person is guilty of assault in the first degree when . . . under circumstances evincing an extreme indifference to human life he recklessly engages in conduct which creates a risk of death to another person, and thereby causes serious physical injury to another person."

[2] General Statutes § 53-21 provides: "INJURY OR RISK OF INJURY TO, OR IMPAIRING MORALS OF, CHILDREN. Any person who wilfully or unlawfully causes or permits any child under the age of sixteen years to be placed in such a situation that its life or limb is endangered, or its health is likely to be injured, or its morals likely to be impaired, or does any act likely to impair the health or morals of any such child, shall be fined not more than five hundred dollars or imprisoned not more than ten years or both."

[3] General Statutes § 53a-70 (a) provides: "A person is guilty of sexual assault in the first degree when such person (1) compels another person to engage in sexual intercourse by the use of force against such other person or a third person, or by the threat of use of force against such other person or against a third person which reasonably causes such person to fear physical injury to such person or a third person, or (2) engages in sexual intercourse with a persons under thirteen years of age."

[4] General Statutes § 53a-71 (a) (1) provides: "A person is guilty of sexual assault in the second degree when such person engages in sexual intercourse with another person and such other person is (1) under sixteen years of age . . . ."

trial. Although the defendant filed two separate appeals, they were consolidated by order dated July 13, 1990. We affirm the judgment of the trial court.

The jury could reasonably have found the following facts. The defendant is married to the mother of the victim. The defendant, his wife, the victim, and another child from the wife's previous marriage lived together. At the time of the incidents in question, the victim was four years of age.

On March 2, 1987, at about noon, emergency medical technicians (EMTs) responded to a call for assistance at the defendant's apartment. When they arrived, they were met by the defendant who advised them that the four year old victim had fallen from a table. One of the EMTs observed the child lying on a bed staring into space. She was initially unresponsive to questions, but finally said that she had fallen. The defendant was present when the EMTs spoke with the victim. At this point, the technicians observed bruises on the victim's eyes, torso, arms and legs. The EMTs asked the defendant about the cause of the victim's injuries and he said that the child had fallen from a chair and hit the table. The defendant's demeanor was calm.

The victim was transported to Yale-New Haven Hospital by ambulance. At the hospital emergency room, she initially drifted in and out of consciousness. When asked if she had been beaten she did not respond. When asked if someone had threatened to hurt her if she told anyone about what had occurred, she nodded yes.

The following observations were made by examining physicians. The victim was three feet four inches tall and weighed thirty-five pounds. She was covered with multiple bruises on her head, cheek, lip, chin, right ear, both eyes, chest, right forearm, back and shins.

The condition of the bruises indicated that they had been present over varying periods of time. The victim had a concussion, a burn scar below her navel, and an injury to her left third toe that had been caused by forceful manipulation. She had a fresh bruise on her left eye, which was swollen shut. When the eye was pried open, it revealed bleeding into the white of the eye. She also displayed fresh bruises on her scalp, her cheek and her ear. A CAT scan revealed a subdural hematoma and swelling in the victim's brain, and disclosed that the victim had sustained three blows to her head. The physicians concluded that the victim's multiple physical injuries were caused by repeated blows inflicted with tremendous force from different directions at different times, and that the injuries inflicted on the victim on March 2, 1987, caused serious impairment of her health and a substantial risk of death. The injuries observed were not consistent with those that would have been inflicted by a single blow or a fall from a table or chair.

A vaginal examination of the victim revealed that she had an enlarged introitus, about twice the normal size for a child of her age, and that her hymenal ring was thickened and showed scarring consistent with its having been ripped and then healed. A vaginal examination of the victim in January, 1987, had shown no abnormality.

The victim, who was six years old at the time of the trial, testified that on various occasions the defendant had touched her with his penis, and had inserted it into her vagina and mouth. He also had inserted his fingers into her vagina.

The victim also testified that the defendant had struck and kicked her on a number of different occasions causing bruises. She stated that he had put her

into very hot bathwater and had hung her upside down on doorknobs. She also testified that he had stuck needles into her legs and toes. She stated that on the day that she was hospitalized the defendant had hit her, had pushed her off of a chair and had told her that he would punish her if she told anyone how she had been injured.

During the period from September, 1986, to March 2, 1987, the defendant was unemployed and was often entrusted with the supervision of the victim. On March 2, 1987, the day that she was hospitalized, the defendant was home alone with the victim.

I

The defendant first asserts that his convictions of sexual assault in the first degree and sexual assault in the second degree for crimes against the same victim violate his rights against double jeopardy as guaranteed to him by the fifth amendment to the constitution of the United States[5] and by the Connecticut constitution.[6] We disagree.

The defendant concedes, as he must, that this issue was not raised at trial. He claims, nonetheless, that this

---

[5] The fifth amendment of the United States constitution provides: "No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger; nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation."

[6] "There is no specific provision against double jeopardy in the constitution of Connecticut. It is nonetheless true that we have in large part adopted the common-law rule against it as necessary to the due process guaranteed by article first § 9, of our constitution." *Kohlfuss* v. *Warden,* 149 Conn. 692, 695, 183 A.2d 626, cert. denied, 371 U.S. 928, 85 S. Ct. 298, 9 L. Ed. 2d 235 (1962).

issue is reviewable pursuant to *State* v. *Evans,* 165 Conn. 61, 327 A.2d 576 (1973), as expanded upon and reformulated in *State* v. *Golding,* 213 Conn. 233, 567 A.2d 823 (1989).

In order to prevail on an unpreserved constitutional claim, a defendant must demonstrate his compliance with all of the following conditions: "(1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." *State* v. *Golding,* supra, 239–40. Here, the defendant asserts that the genesis of his double jeopardy claim involves the alleged multiple punishments imposed on him for the same offense in a single trial. *Brown* v. *Ohio,* 432 U.S. 161, 165, 97 S. Ct. 2221, 53 L. Ed. 2d 187 (1977); *State* v. *Devino,* 195 Conn. 70, 73, 485 A.2d 1302 (1985). Because the defendant's claim falls within the ambit of the *Devino* line of cases, his claim is properly reviewable. *State* v. *Snook,* 210 Conn. 244, 263–64, 555 A.2d 390, cert. denied, 492 U.S. 924, 109 S. Ct. 3258, 106 L. Ed. 2d 603 (1989).

As a preliminary matter, we note that although the defendant claims that this double jeopardy claim is grounded in both the Connecticut and the federal constitutions, he has failed to provide us with an independent analysis of his Connecticut constitutional claim. This court, as well as our Supreme Court, has consistently declined to consider criminal state constitutional claims when we have not been provided with an independent analysis of the particular state constitutional provision raised. *State* v. *Perez,* 218 Conn. 714, 723,

591 A.2d 119 (1991); *State* v. *Turner,* 24 Conn. App. 264, 271 n.4, 587 A.2d 1050, cert. denied, 218 Conn. 910, 591 A.2d 812 (1991). We will not depart from this well established policy in the present case.

Connecticut courts have consistently followed the double jeopardy analysis used in the federal jurisdictions. See *State* v. *Thompson,* 197 Conn. 67, 71–73, 495 A.2d 1034 (1985); *State* v. *Rothenberg,* 195 Conn. 253, 264–65, 487 A.2d 545 (1985); *State* v. *Blackwell,* 20 Conn. App. 193, 195, 565 A.2d 549 (1989). That strand of the double jeopardy provision that prohibits multiple punishments for the same offense; *North Carolina* v. *Pearce,* 395 U.S. 711, 717, 89 S. Ct. 2072, 23 L. Ed. 2d 656 (1969); *State* v. *Delgado,* 19 Conn. App. 245, 250, 562 A.2d 539 (1989); is compromised only if the charges arise out of the same act or transaction *and* if the charged crimes are in reality the same offense. *State* v. *Snook,* supra, 264; *State* v. *Blackwell,.* supra, 196. Multiple punishments are forbidden only if both conditions are met. *State* v. *Palmer,* 206 Conn. 40, 52, 536 A.2d 936 (1988). " '[W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.' *Blockburger* v. *United States,* 284 U.S. 299, 304, 52 S. Ct. 180, 76 L. Ed. 306 (1932)." *State* v. *Blackwell,* supra. If each statute involved requires proof of a fact that the other does not, the cases are not the same under *Blockburger. State* v. *Blackwell,* supra; *State* v. *Lonergan,* 16 Conn. App. 358, 365–66, 548 A.2d 718 (1988), aff'd, 213 Conn. 74, 566 A.2d 677 (1989), cert. denied, 496 U.S. 905, 110 S. Ct. 2586, 110 L. Ed. 2d 267 (1990).

The defendant concedes that, under the *Blockburger* test, sexual assault in the second degree is not a lesser

included offense of sexual assault in the first degree. As the defendant properly recognizes, one can commit sexual assault in the first degree without first having committed sexual assault in the second degree. *State* v. *Franko,* 199 Conn. 481, 494, 508 A.2d 22 (1986). For a conviction under General Statutes § 53a-71 (a) (1), sexual assault in the second degree, it must be proven that the defendant engaged in sexual intercourse with another person who is under the age of sixteen years. In order to prove a violation of General Statutes § 53a-70 (a), sexual assault in the first degree, it must be established that the defendant compelled another person to engage in sexual intercourse by the use or the threat of the use of force. Thus, each statute requires proof of a fact that the other did not. Applying the *Blockburger* test clearly demonstrates that these are two separate crimes for which the defendant could be prosecuted and punished without violating the constitutional prohibition against double jeopardy.

Our analysis does not end here, however. The *Blockburger* test is a rule of statutory construction and its application does not result in a conclusive presumption. Thus, a presumption under *Blockburger* that there are two crimes which may warrant two punishments may be rebutted " 'by showing a clear legislative intent that the two statutes be treated as one for double jeopardy purposes.' " *State* v. *Gilchrist,* 24 Conn. App. 624, 628, 591 A.2d 131, cert. denied, 219 Conn. 905, 593 A.2d 131 (1991); *State* v. *Blackwell,* supra, 197.

We are not persuaded that the legislature intended that sexual assault in the first degree and sexual assault in the second degree be classified as two nominally distinct crimes for which only one punishment could be imposed. It is possible for a defendant to be convicted of one of these crimes and not the other because each requires proof of facts that the other does not. See

*State* v. *Blackwell,* supra. In addition, the statute proscribing sexual assault in the first degree is designed to protect all persons, regardless of age, from being compelled to engage in sexual intercourse by the use of force, or the threat of the use of force. The statute proscribing sexual assault in the second degree has its origins in the desire of the state to prohibit persons from engaging in sexual intercourse with individuals who are deemed legally incapable of consent. *State* v. *Blackwell,* supra, 197–98.

We conclude, therefore, that the defendant's claim is without merit.

## II

The defendant next posits that his conviction of three counts of risk of injury to a child, and the punishment imposed on each separate count, violated his right against double jeopardy under both the state and federal constitutions. Again, the defendant concedes that this claim was not raised in the trial court, but asserts that it is reviewable under *State* v. *Evans,* supra, and *State* v. *Golding,* supra. We agree that the issue raised may properly be reviewed.

The defendant has again failed to provide a separate and distinct analysis of an independent claim under the Connecticut constitution. We decline to engage in a separate state constitutional analysis when the parties do not provide us with such analysis. See *State* v. *Perez,* supra; and *State* v. *Turner,* supra.

The defendant was convicted of two counts of risk of injury that were contained in a single information that also contained charges of first degree assault. The third risk of injury charge was contained in a separate information along with charges of sexual assault in the first degree and sexual assault in the second degree.

Thus, the two informations divided the charges against the defendant into two categories, one involving physical assaults and beatings, and the other involving acts of sexual misconduct.

In determining whether the prohibition against double jeopardy has been violated, we must first determine whether the crimes arose out of the same act or transaction. *State* v. *Flynn*, 14 Conn. App. 10, 16, 539 A.2d 1005, cert. denied, 488 U.S. 891, 109 S. Ct. 226, 102 L. Ed. 2d 217 (1988). Only if we answer this question in the affirmative are we obligated to address the second issue of whether the crimes charged constitute the same offense. *State* v. *Devino*, supra, 74; *State* v. *Flynn*, supra.

General Statutes § 53-21 as charged does not proscribe a continuing course of criminal conduct, but it does proscribe "acts directly perpetrated on the person of the minor and injurious to his moral or physical well-being." *State* v. *Dennis*, 150 Conn. 245, 250, 188 A.2d 65 (1963). Each separate act of conduct injurious to the moral or physical well-being of the minor constitutes a separate, discrete offense. *State* v. *Snook*, supra, 262.

In this instance, the state produced substantial evidence that on numerous separate occasions the defendant beat or physically tortured the victim. The state also produced substantial evidence that individual acts of forcible sexual intercourse occurred between the defendant and the victim on a number of occasions. The trial court in its charge clearly pointed out to the jury the claimed factual predicate on which each separate count rested. Thus, our examination of the record and the court's charge to the jury leads us to conclude that these separate counts of risk of injury did not arise out of the same act or transaction. See *State* v. *Flynn*, supra, 17.

On appeal, the defendant bears the burden of proving that the prosecutions are for the same offense in fact and in law. *State* v. *Snook,* supra, 264; *State* v. *Torrice,* 20 Conn. App. 75, 95, 564 A.2d 330, cert. denied, 213 Conn. 809, 568 A.2d 794 (1989). Our conclusion that the three risk of injury offenses charged in the informations constitute distinct and separate crimes for the purposes of double jeopardy leads us to further conclude that the defendant has failed to sustain his burden, and, therefore, his double jeopardy claim must fail.

### III

Finally, the defendant asserts that his conviction is fatally flawed because of prejudicial remarks that were made by the prosecutor during final argument, thereby denying him of his right to a fair trial. The defendant concedes that no objections were raised during closing argument but claims reviewability under the doctrine of *State* v. *Evans,* supra, and *State* v. *Golding,* supra. We disagree.

Our review of the record discloses that the remarks now challenged represented isolated instances of alleged misconduct, and do not represent a pattern of conduct that was repeated throughout the trial. We, therefore, decline to review their propriety.[7] *State* v. *Castonguay,* 218 Conn. 486, 507–508, 590 A.2d 901 (1991); *State* v. *Watlington,* 216 Conn. 188, 193, 579 A.2d 490 (1990); *State* v. *Somerville,* 214 Conn. 378, 393, 572 A.2d 944 (1990); *State* v. *Peruta,* 24 Conn. App. 598, 609, 591 A.2d 140 (1991).

The judgment is affirmed.

In this opinion the other judges concurred.

---

[7] We reiterate with respect to unpreserved due process claims that " '[d]ue process is not to be regarded as a giant constitutional vacuum cleaner which sucks up any claims of error which may occur to a party upon microscopic examination of the trial record.' " *State* v. *McMurray,* 217 Conn. 243, 253, 585 A.2d 677 (1991); *State* v. *Peruta,* 24 Conn. App. 598, 602 n.2, 591 A.2d 140 (1991).