[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is a habeas petition initially filed by the petitioner Eugene Russell on October 22, 1991. By pleading dated March 6, 1995 captioned, "Second Amended Petition", the petitioner asserts that his present confinement in the custody of the Commissioner of Corrections is unlawful on the basis of his claim that he was denied the effective assistance of counsel in the underlying CT Page 5905 criminal procedure. Specifically, the petitioner alleges that his trial counsel was ineffective in that he failed to cross-examine the State's witnesses adequately; failed to call pertinent witnesses to testify on his behalf, including his stepdaughter's biological father, his stepdaughter, the police officer who arrested his stepdaughter's biological father, the defendant's oldest daughter, and a medical expert who would have established that the defendant was not the assailant. Additionally, the petitioner claims that his counsel's performance was deficient in that he failed to object to the admission of certain evidence, failed to file requests to charge, and/or to except to certain instructions by the court, failed to take exception to certain of the prosecutor's statements during jury argument, failed present evidence of third-party culpability, i.e. that the victim's biological father was responsible for the criminal acts, failed to prepare a proper investigation, failed to conduct adequate discovery, made inappropriate comments concerning the petitioner, failed to move to sever the cases, and failed to retain and call as a witness an appropriate expert witness.
On April 10, 1996 and June 5, 1996, the court conducted an evidentiary hearing on this petition during which the court heard oral testimony and received documents into evidence, including the transcript of the petitioner's underlying criminal trial as well as a transcript of relevant neglect proceedings in the Juvenile Division. Based on the evidence adduced at the habeas hearing, the court makes the following findings and order.
The petitioner is currently an inmate in the custody of the Commissioner of Corrections. On June 30, 1989, following a consolidated jury trial in the Superior Court, Judicial District of New Haven, the petitioner was found guilty in Docket Number CR 83588 of Assault in the First Degree in violation of Connecticut General Statutes § 53a-59, and two counts of Risk of Injury to a Minor in violation of C.G.S. § 53-21. Additionally, the petitioner was found guilty in Docket Number CR 87222 of Sexual Assault in the First Degree in violation of C.G.S. § 53a-70, Sexual Assault in the Second Degree in violation of C.G.S. §53a-71, and Risk of Injury in violation of C.G.S. § 53-21. Thereafter, the petitioner was sentenced by the court to a total effective sentence of fifty years confinement in the custody of the Commissioner of Corrections.
In his criminal trial, the petitioner was represented by Special Public Defender Wayne Sadick who is now deceased. The CT Page 5906 State was represented by Assistant State's Attorney Elpedio Vitale.
The petitioner's conviction was upheld on direct appeal.25 Conn. App. 243 (1991), cert. den'd., 220 Conn. 911 (1991).
As a preliminary observation before discussion of the petitioner's fusillade of allegations against his trial counsel, the court notes that the petitioner was an extraordinary difficult client to represent. The record reveals that Attorney Sadick was the third special public defender assigned to the petitioner's case. When Attorney Sadick appeared in court with the petitioner for jury; selection, the petitioner refused to speak with him. Additionally, he did not respond to questioning from the court. Petitioner's Exhibit 1, Trial Transcript (T),1-3, June 2, 1989. Thereafter, because of this behavior, Attorney Sadick moved to have the petitioner mentally examined. (T. 3, June 2, 1989) While it appears that the petitioner felt it unreasonable to be compelled to proceed to trial with Attorney Sadick on the basis that he was unfamiliar with the file, the record discloses that Attorney Sadick had been in the file for approximately six weeks (T. 7, June 6, 1989), and that he had had ample opportunity to review the petitioner's file which had been turned over to him by previous counsel. (T. 4, June 6, 1989) Additionally, Attorney Sadick indicated to the court that he had reviewed the transcripts of a juvenile proceeding relevant to the charges against the petitioner. (T. 6, June 6, 1989) Based on this information, the court ordered jury selection to proceed.
Difficulty with the petitioner did not diminish with the commencement of evidence. A review of the transcript reveals that on more than one occasion there were outbursts from the petitioner during witness testimony. (Cf T. 30-34, June 21, 1989, during the testimony of State's witness Alan Shulik, Ph.D; T. 119-122, June 22, 1989, during the testimony of Defense witness Concetta Russell, the petitioner's wife; T. 165, June 28, 1989, during his own testimony) Additionally, counsel's task was made more difficult by the petitioner's failure to cooperate with him. Following the direct testimony of Robert Jacobson, M.D., a significant state witness who examined the minor victim at the Yale-New Haven hospital, counsel requested a continuance for the purpose of adequately preparing a cross examination of Dr. Jacobson. (T. 141, June 14, 1989) Mr. Sadick indicated to the court that while he had the transcript of the doctor's prior testimony in his possession for approximately six weeks, he had CT Page 5907 given the transcript to the petitioner to review, but the petitioner had failed to bring it with him to court. (T. 141-142, June 14, 1989) The court permitted counsel an opportunity to review the transcript overnight prior to finishing cross, examination of Dr. Jacobson on the basis that the petitioner had left the transcript in his cell. (T. 188, June 14, 1989) Finally, in regard to the petitioner's lack of cooperation with Attorney Sadick, was his failure to give counsel a list of witnesses he wished to have called to testify until well into the trial. On June 28, 1989, several days after the commencement of evidence, the petitioner had still not provided a witness list to Attorney Sadick. As a reason, he told the court that he did not have a pencil at lunch time. (T. 96-99, June 28, 1989) It is against this backdrop that the court examines the petitioner's claims.
In assessing a claim of ineffective assistance of counsel, Connecticut has adopted the two-pronged test that a petitioner must prove that his counsel's performance fell below the required standard of reasonable competence, and that he was prejudiced by counsel's deficiencies. Strickland v. Washington, 466 U.S. 668, (1984); Williams v. Manson, 195 Conn. 561 (1985). As pointed out in the respondent's brief, in reviewing an ineffectiveness claim, the habeas court, ". . . must indulge a strong presumption that counsel's conduct falls within the wide range or reasonable professional assistance; that is, under these circumstances, the challenged action "might be considered sound trial strategy." (Internal citations omitted) Similarly, this court must make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." (Internal citations omitted) Magnotti v. Meachum, 22 Conn. App. 669
(1990).
While the facts which led to the underlying convictions are fully reported in the Appellate Court decision, the heart of the State's evidence at trial was that the petitioner had both physically and sexually assaulted R, the petitioner's step daughter, who was six years old when the trial was conducted. The State offered proof that on March 2, 1987, emergency personnel transported R to the Yale New Haven Hospital where she was examined and her body was found to be covered with multiple bruises. A Cat-scan revealed that she had a subdural hematoma. Vaginal examination of the child showed physical findings consistent with sexual abuse. While the victim had initially reported that her biological father had abused her, the State's CT Page 5908 trial evidence implicated both the petitioner and his spouse in the misdirection of these initial allegations. Evidence adduced at the trial demonstrated that it was the petitioner who had physically and sexually assaulted the minor victim.
The petitioner asserts that Attorney Sadick failed to cross examine the State's witnesses adequately. The court disagrees. While the court does not intend to comment on the cross examination of each witness, a review of the trial transcript reveals that Attorney Sadick's cross examinations were vigorous and probing. The court is mindful, in the context of this claim, that it is often not a wise trial tactic for counsel to object to every possibly objectionable question. Thus, for example, Attorney Sadick's failure to object to the leading nature of the State's examination of the (then) six year old victim's testimony can readily be seen as a sound tactical decision.
From a review of the Petitioner's Post Trial Memorandum of Law filed in this matter, it appears that counsel has scrutinized the trial transcript and posited, as ineffectiveness, each instance in which Attorney Sadick did not object to testimony of questionable admissibility, and each instance in which a question posed by Attorney Sadick led to testimony unhelpful to the petitioner's cause. The court has reviewed each of these instances in the context of counsel's conduct during the entire trial, and does not find that the deficiencies claimed by the petitioner rendered counsel's performance to be deficient.
The petitioner next claims that counsel failed to call pertinent witnesses on his behalf. He asserts that counsel failed to call the petitioner's stepdaughter's biological father. The petitioner is incorrect. On June 27, 1989, the victim's biological father, Peter King, was called as a defense witness. Following argument of counsel, Mr. King was permitted to assert his constitutional privilege against self incrimination out of the presence of the jury. (T. 44, June 27, 1989) Additionally, the petitioner claims that counsel failed to call the defendant's stepdaughter. The petitioner's stepdaughter R was the victim of the petitioner's criminal acts. Pursuant to judicial determination, R was permitted to testify via video tape in a proceeding in which Attorney Sadick was permitted to cross examine, and in which the petitioner was afforded requisite constitutional safe guards. The court sees no basis for the petitioner's claim that Attorney Sadick should have thereafter called R as a defense witness. CT Page 5909
The petitioner also makes the somewhat broadside claim that counsel should have called as defense witnesses the police officer who arrested Mr. King, the defendant's oldest daughter, and a medical expert who would establish that the defendant was not the assailant. At the habeas hearing the petitioner offered no credible proof that any of these witnesses would have testified favorably for the petitioner. Additionally, the petitioner produced no medical evidence at the habeas hearing to contradict the overwhelming medical evidence of R's significant serious physical injuries.
The petitioner next claims that counsel failed to object to the admission of certain evidence. The court views this assertion as a reiteration of the petitioner's claim that counsel's cross examination was inadequate. A review of the transcript belies the petitioner's claims. The petitioner alleges, as well, that counsel failed to file requests to charge and or to except to certain instructions by the court. While the petitioner is correct that Attorney Sadick did not file any written requests to charge, the petitioner has adduced no evidence at the habeas hearing that the jury charge was either inadequate or inappropriate. The record does, however, reveal that counsel did object to certain portions of the jury charge concerning expert witnesses and consciousness of guilt. (T. 191, June 29, 1989) The petitioner has pointed to no other portion of the jury charge to which he believes counsel should have objected.
Next, the petitioner asserts that counsel failed to object to the prosecution's improper comments during closing argument. While not pointed out by counsel, a review of the appellate record reveals that the Appellate Court refused to review this claim because it had not been preserved at trial. Cf. State v.Russell, 25 Conn. App. 243, 254 (1991). Thus, if these comments were, in fact, prejudicial and their impact prejudiced the petitioner, they could be a basis for granting the petitioner a new trial. A review of the transcript of oral argument, however, does not substantiate the petitioner's claim. In the course of a lengthy argument, Attorney Vitale interjected his personal view that he thought the evidence showed that the petitioner beat the victim almost to death, that he thought the victim was a pretty good witness, and that he seriously doubted that the doctors were making up their testimonies. (T. 111-119, June 29, 1989)
While it is improper for counsel, in closing arguments, to CT Page 5910 vouch for the credibility of any witness, at the moment it occurs counsel is faced with the difficult decision of whether to interrupt opposing counsel's argument, to wait until counsel is finished before making any objections, or to make no response. In this case, whether by choice or inaction, counsel followed the last choice, a course which is not necessarily inappropriate. In this instance, while hindsight suggests that the court may well have sustained an objection to these comments, or the court might have recalled the jury for further instructions concerning their unique entitlement to determine the credibility of witnesses, a review of the court's charge reveals that the court's jury charge on the issue of the credibility of witnesses was complete and appropriate. Additionally, in this case, Attorney Sadick had the difficult dilemma that the petitioner had testified, albeit, against his advice. A review of the petitioner's testimony, particularly that portion in which he stated that the victim did not, in fact, have the bruises on her body as testified to by the emergency room physical, suggests that it may have been a sound tactical decision by Attorney Sadick not to highlight the issue of the credibility of witnesses before the jury. Additionally, in regard to the issue of prejudice, the Appellate Court in this case opined that; "Our review of the record discloses that the remarks now challenged represented isolated instances of alleged misconduct, and do not represent a pattern of conduct that was repeated throughout the trial." State v. Russell, supra, 25 Conn. App. 254.
The petitioner next claims that Attorney Sadick failed to present evidence that the victim's biological father was responsible for these offenses. To the contrary, the record is replete with instances in which Attorney Sadick brought out through examination that the victim had first identified Peter King as a perpetrator, and that Peter King had initially been arrested for molesting R. At the outset of the trial, Attorney Sadick successfully resisted the State's motion to preclude evidence of third party guilt. (T. June 8, 1989) Thereafter, Attorney Sadick asked R on cross examination if she had first told the police that her father did these things to her. (T.21-32, June 12, 1989) On his cross examination of Rocco Riccio, a worker from the Department of Children and Families, Attorney Sadick elicited testimony that R had told the police that Peter had abused her. (T. 70, June 19, 1989) Similarly, on his cross examination of Robert Daniel Walker, a mental health worker at the Yale Hospital Children's Inpatient Unit, Attorney Sadick brought out that R had reported that Peter had hit her. (T. 17, June 19, 1989) Similarly, counsel called Virginia Williams as a CT Page 5911 witness, an employee of the East Haven Police Department, who testified that R had told her that P had sexually molested her. (T. 19-24, June 22, 1989) Finally, the petitioner called his wife, Concetta Russell, as a witness who reported that R had told her that her biological father had molested her. (T. 63-65, June 22, 1989) Thus, contrary to the petitioner's assertion, there is ample evidence in the record that counsel sought to present evidence of a third party's culpability for the offenses charged to the petitioner.
As part of his claim that counsel failed to prepare a proper investigation, the petitioner alleges that Attorney Sadick failed to retain appropriate experts, to properly review evidence in the State's possession, and to have such analyzed by appropriate experts. The testimony offered by the petitioner in support of this omnibus claim was scant and unpersuasive. The petitioner claimed that counsel should have retained an expert to rebut the medical testimony concerning the subdural hematoma sustained by the minor victim. At the criminal trial, Dr. Robert Jacobson of the Yale University Health Services testified that he examined R at the emergency room. He testified that she was covered with multiple bruises, had a terrible bleed around her eye, cigarette burns on her body, an unusual bruise on her toe, and a subdural hematoma which, he said, was caused as a result of the child being hit repeatedly from many different directions with a tremendous amount of force. (T. 104-120, June 14, 1989) These findings were inconsistent with the petitioner's claim to the police and at trial that R had sustained a head injury as a result of falling off a table. And they belied the petitioner's assertion that R did not, in fact, have many of the bruises found on her body by Dr. Jacobson. In furtherance of his claim that Attorney Sadick was negligent for his failure to retain experts to rebut the state's evidence, the petitioner offered no expert testimony at the habeas hearing to contradict the state's evidence; nor did he offer any evidence at the habeas hearing that such experts exist.
Similarly, the petitioner offered no credible evidence that Attorney Sadick failed to adequately review the evidence in the State's possession. The petitioner also claims that Attorney Sadick failed to review a videotape of the victim accusing her biological father of the offense. During the habeas hearing, the petitioner offered no testimony concerning this videotape. Furthermore, it is clear from a reading of the entire trial transcript as well as the juvenile court neglect proceedings CT Page 5912 concerning R and her sister L, that R did, at earlier dates, accuse her biological father of having molested her. This fact was not kept from the jury. The jury also heard, however, substantial evidence from which the jury could reasonably have concluded that the petitioner and his wife impelled R to make allegations against her biological father, and that it was only once she was out of their control and possession that she began to relate the details of the substantial physical and sexual abuse she suffered as a result of the petitioner's criminal misconduct.
The petitioner also alleges that Attorney Sadick failed to investigate all potential witnesses, including all family members and friends of the victim. At the habeas hearing, the petitioner offered no credible evidence that Attorney Sadick unreasonably failed to call witnesses on the petitioner's behalf, or that there were any such individuals whose testimony would have been helpful to him. From a review of the trial transcript, it is evident that the petitioner did wish counsel to call further witnesses on his behalf, though he was tardy in providing Attorney Sadick with a prospective witness list. (T. 79, 96-98, June 28, 1989) Not only is there no evidence that the testimony of these prospective witnesses would have aided the petitioner, it is clear that the testimony of at least one witness, Carmel Staplins, called by Attorney Sadick at the insistence of the petitioner, was, in fact, harmful to the petitioner. (T. 77, June 28, 1989) Additionally, the petitioner testified on his own behalf against Attorney Sadick's advice. (T. 102, June 28, 1989) The court finds that in the petitioner's testimony he was evasive, inconsistent, and argumentative. His testimony was not credible. Having made these poor choices to testify himself and to insist upon calling a damaging witness, the petitioner is hard pressed to convince this court that he was prejudiced by his counsel's failure to avail the petitioner further opportunities to cause himself self-inflicted evidentiary wounds.
The petitioner next claims that counsel failed to subpoena the police department's entire file of its investigation into the biological father's involvement into these offenses, and to request that the court conduct an in camera review of its contents. Having produced no evidence of the contents of this file at the habeas hearing, the court will not speculate that it would have been helpful to the petitioner. Similarly, the petitioner has failed to adduce any credible evidence that a review of any transcripts of proceedings against the biological CT Page 5913 father would have been helpful to him.
As to the petitioner's claim that Attorney Sadick failed to request and/or to adequately review all of the victim's medical and psychological/psychiatric records, a review of the transcripts of both the Juvenile Division and criminal trial proceedings demonstrates that counsel had voluminous materials available to him concerning the victim's health care treatment. This sweeping claim is without any foundation.
Similarly, the petitioner's assertions that counsel failed to conduct adequate discovery, to request that an investigation be undertaken to obtain statements from all potential witnesses, and failed to consult with the victim's treating physicians or therapists are broadside allegations unsupported by any evidentiary particularization.
As to the petitioner's claim that counsel failed to consult with him to determine what defense the defendant felt was appropriate, a review of the record makes it plain that it was the petitioner, and not counsel, who railed to consult. As previously noted, at the outset of this trial, the petitioner refused to speak with Attorney Sadick. He failed to bring relevant materials to court which counsel had given to him to review. He failed, until the passage of several trial days, to provide counsel the names of individuals he wished subpoenaed to testify. Additionally, it is clear from the petitioner's testimony as well as that of his spouse, that his defense was that the victim was not injured as substantially and in the manner claimed by the several State's witnesses, and that injuries she did sustain were caused by the child's biological father. Through his examinations and cross examinations of witnesses, Attorney Sadick attempted to advance these defenses.
The petitioner is correct in his assertion that counsel made inappropriate comments regarding the petitioner. Following jury selection, the State commenced the presentation of evidence on June 14, 1989. On June 21, 1989, during the testimony of Alan Shulik, Ph.D, there was an outburst from the petitioner. (T.30-34, June 21, 1989) On the following day, and in the absence of the jury, the petitioner reported to the court that a corrections officer had told him that Attorney Sadick had told the officer at the end of the day on June 21st that on transporting the petitioner back to the; correctional institution they should stop the truck, let the petitioner run, and then shoot him. (T. 3-5, CT Page 5914 June 22, 1989) Attorney Sadick explained to the court that he made such comments, though not exactly as reported by the petitioner, in jest and in the context of his in-court outburst the day beforehand. (Id.) While these comments were clearly improper, there is no evidence that any member of the jury was ever made privy to them. They did not prejudice the petitioner. Counsel's vigorous defense of this difficult client during trial belies the assertion that he had a conflict of interest.
In his brief, counsel for the petitioner belatedly claims that these comments represent the existence of a legal conflict of interest between Attorney Sadick and the petitioner. A legal conflict of interest has been defined as encompassing, "every interest that will adversely affect either the judgment or loyalty of a lawyer to a client, whether it be a conflicting, inconsistent, diverse, or other interest." Weiss v. StatewideGrievance Committee, 227 Conn. 802, 814 (1993). Additionally, conflict of interest between an attorney and client has been held to be present ". . . where one party in interest stands to gain significantly by adducing evidence, advancing arguments, or engaging in conduct that is detrimental to the interests of another party." Phillips v. Warden, 220 Conn. 112, 126 (1991). In a constitutional sense, the right to counsel is implicated by the existence of an actual conflict of interest because . . . "counsel has breached the duty of loyalty. . ." Id., 133. In this instance, the petitioner has pointed to no adverse interests and no breach of loyalty by Attorney Sadick. The court takes these off-hand comments to a corrections officer as more the product of Attorney Sadick's frustration due to the petitioner's self destructive in-court outbursts the day before than any malicious intent on his part. While they do not glorify the memory of this now deceased attorney, standing alone they do not prove the existence of an actual conflict of interest.
Finally, the petitioner claims that counsel failed to sever the cases, which resulted in prejudice to the petitioner. The short answer to this claim is that the court had already ordered a consolidation of two files against the petitioner prior to Attorney Sadick's appointment as the petitioner's third special public defender. (T. 2, June 2, 1989) The petitioner has offered no reasonable basis for this court to conclude that the trial court, having already ordered the files consolidated for trial, would have been willing to reverse itself upon further motion of Attorney Sadick. Counsel is under no mandate to pursue the pointless. CT Page 5915
For the reasons stated, the petition is dismissed.
Bishop, J.